## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PRONERVE HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 15-10373 (KJC) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Related Docket No.: 14** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION; AND (IV) SCHEDULING A FINAL HEARING

Upon the motion dated February 24, 2015 (the "Motion") of the above-captioned debtors,

as debtors and debtors in possession (the "Debtors"), pursuant to sections 105(a), 361, 362, 363,

and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules

for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the

entry of an interim order (the "Order") and a final order (the "Final Order") authorizing the

Debtors to do the following:

i.       obtain postpetition financing in an amount up to $2.5 million (the

"DIP Credit Facility"), pursuant to section 364 of the Bankruptcy Code by entering into a

secured debtor in possession credit agreement, in substantially the form attached to the Motion as

**Exhibit B**, as the same may be amended, supplemented or otherwise modified from time to time

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: ProNerve Holdings, LLC (1653); ProNerve, LLC (2155); Boulder Intraoperative Monitoring, LLC (9147); Colorado Intraoperative Monitoring, LLC (5837); Denver South Intraoperative Monitoring, LLC (3164);    Eugene Intraoperative Monitoring, LLC (0718); ProNerve Technologies, LLC (1814); Riverside Intraoperative Monitoring, LLC (6963); and Topeka Intraoperative Monitoring, LLC (6151).   The location of the Debtors' corporate headquarters and the service address for all Debtors is 7600 E. Orchard Road, Suite 200 N, Greenwood Village, Colorado 80111.

in accordance with its terms (the "DIP Credit Agreement"),[2] and any related loan and security documents (together with the DIP Credit Agreement, collectively, the "DIP Loan Documents") between the Debtors, as Borrowers, and SpecialtyCare IOM Services, LLC, as Lender (the "DIP Lender"), on the terms and subject to the conditions set forth therein;

        ii.     execute, deliver, and enter into the DIP Loan Documents and perform such other and further acts as may be necessary, required, or desirable in connection therewith;

        iii.    grant mortgages, security interests, and liens to the DIP Lender, pursuant to section 364(d), subject in each case to the Carve-Out (as defined below) and subordinate only to the Permitted Liens, to secure amounts owing under the DIP Loan Documents;

        iv.    use the proceeds of the DIP Credit Facility to fund (a) postpetition operating expenses of the Debtors incurred in the ordinary course of business and (b) working capital, capital expenditures, and other general corporate purposes of the Debtors;

        v.     draw the proceeds of the DIP Credit Facility on an interim, weekly, and final basis subject to the terms and conditions of the DIP Credit Agreement, this Order, and the Final Order;

        vi.    use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("Cash Collateral"); and

        vii.   grant adequate protection to SpecialtyCare IOM Services, LLC as the successor lender (the "Prepetition Lender") under that certain Credit Agreement dated as of December 12, 2012 by and among ProNerve, LLC, as the borrower and the lenders party thereto

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the DIP Credit Agreement.

-2-

(the "Prepetition Credit Agreement") with an amount outstanding of $43,176,850.17 (the

"Prepetition Loan") as of the Petition Date, for the Debtors' use of its Cash Collateral and the

granting of priming liens to secure the DIP Credit Facility in the form of replacement liens on the

Debtors' property, subordinate to the DIP Liens;

and the Court having considered the Motion and the DIP Credit Agreement and, in accordance

with Bankruptcy Rules 4001(b) and 4001(c), requisite notice of the Motion having been provided

by overnight delivery, facsimile, or e-mail on February 24, 2015 to (i) the Office of the United

States Trustee for the District of Delaware (Attn: Tiiara N.A. Patton); (ii) the entities listed on

the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to

Bankruptcy Rule 1007(d); (iii) counsel to the Prepetition Lender; (iv) the Internal Revenue

Service; (v) the Office of the United States Attorney for each state in which the Debtors operate;

(vi) the Office of the Attorney General for each state in which the Debtors operate; (vii) the

National Association of Attorneys General; (viii) the Securities and Exchange Commission; (ix)

all parties entitled to notice pursuant to Local Rule 9013-1(m); and (x) all parties who have, or

may, assert an interest in the DIP Collateral (as defined below); and a hearing to consider the

interim relief requested in the Motion having been held and concluded by the Court on February

____, 2015 (the "Interim Hearing"); and all objections, if any, to the interim relief requested in the

Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court

that granting the interim relief requested is necessary to avoid immediate and irreparable harm to

the Debtors pending a final hearing on the Motion (the "Final Hearing") and that such interim

relief is fair and reasonable, in the best interest of the Debtors' estates, and is essential for the

continued operation of the Debtors' business; and upon consideration of the *Declaration of*

*George D. Pillari in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* and

-3-

such other evidence presented or proffered at the Interim Hearing; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:**

A.      On February 24, 2015 (the "Petition Date"), each of the Debtors commenced a case (collectively, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

B.      The Debtors continue to manage and operate their business and property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 4001(c). Venue of the Chapter 11 Cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      No official committee of unsecured creditors has yet been appointed in any of the Chapter 11 Cases.

E.      The notice given by the Debtors of the Motion and the Interim Hearing was the best available under the circumstances, constitutes due and sufficient notice thereof, and complies with Bankruptcy Rules 4001(b) and 4001(c).

F.      As of the Petition Date, the Debtors were indebted and liable to the Prepetition Lender under the Prepetition Loan.

-4-

G.     Subject to paragraph 25 of this Order, the Debtors have represented that the Prepetition Loan (i) constitutes the legal, valid, and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (ii) is not subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) is secured by valid, binding, perfected, enforceable, first-priority liens and security interests over substantially all of the assets of the Debtors (the "Prepetition Liens"). The Debtors have waived any right to challenge the Prepetition Loan and the Prepetition Liens on any grounds, including those set forth above.

H.     Good cause has been shown for the entry of this Order.

I.     The Debtors have an immediate need to use Cash Collateral and to obtain the financing under the DIP Credit Facility in order to permit, among other things, the orderly continuation of the operation of their business. The Debtors' access to sufficient working capital and the incurrence of new indebtedness are vital to preserve and maintain the Debtors' going concern values and a successful reorganization of the Debtors. If the Debtors do not obtain authorization to use Cash Collateral and borrow under the DIP Credit Agreement, the Debtors will suffer irreparable harm.

J.     The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lender under the DIP Loan Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain adequate secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Lender, subject to the Carve-Out (as defined below), the DIP Liens

-5-

(as defined below) under the terms and conditions set forth in this Order and in the DIP Loan Documents.

K.    The terms of the DIP Credit Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

L.    The DIP Credit Facility has been negotiated in good faith and at arm's length between the Debtors and the DIP Lender, all parties have been represented by counsel in connection with such negotiations, and the terms of the DIP Credit Facility are fair and reasonable under the circumstances, are enforceable in accordance with their terms, and have been entered into in good faith. Accordingly, all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Credit Facility and the DIP Loan Documents, including without limitation, (i) all loans made to the Debtors pursuant to the DIP Credit Agreement, and (ii) any Obligations (all of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

M.    The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Credit Facility in accordance with this Order and the DIP Loan Documents is therefore in the best interest of the Debtors' estates.

-6-

#32674517 v1

N.      The Debtors have represented that, other than the Prepetition Lender under the Prepetition Loan, no other entity has a lien or mortgage on, or security interest in, any property of the Debtors (other than Permitted Liens under the DIP Credit Agreement).

O.      The cash on deposit in the Debtors' bank accounts, placed on deposit by the Debtors with the clerk of any court, amounts received from customers, and other proceeds of the Debtors' properties constitute issues, proceeds, profits, and income and constitute Cash Collateral in accordance with section 363(a) of the Bankruptcy Code, whether such Cash Collateral was in existence on the date the petition was filed or such Cash Collateral was thereafter acquired or received by the Debtors.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:**

1.      The Motion is granted on an interim basis, as set forth herein.

<u>Authorization of the DIP Credit Facility and the DIP Loan Documents</u>.

2.      The Debtors are hereby authorized to execute and deliver the DIP Loan Documents. The Debtors are hereby authorized to borrow money pursuant to the DIP Credit Agreement on an interim basis in the amount of $800,000. The Debtors are hereby authorized to use the proceeds of the DIP Credit Facility in accordance with the terms of this Order and the DIP Loan Documents.

3.      The terms, conditions, and covenants of the DIP Credit Agreement and the other DIP Loan Documents are hereby approved on an interim basis through the date of the Final Hearing.

-7-

4.          In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and empowered to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all fees and expenses reasonably required or necessary for the Debtors' performance of the DIP Obligations under the DIP Loan Documents, including, without limitation, the following:

i.          the execution, delivery, and performance of the DIP Credit Agreement and the other DIP Loan Documents and any exhibits attached thereto and

ii.          the performance of all other acts required under or in connection with the DIP Loan Documents.

5.          Upon execution and delivery of each DIP Loan Document, each DIP Loan Document shall constitute a valid and binding obligation of the Debtors, enforceable against each Debtor party thereto in accordance with its terms. No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 362 or 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

Use of Proceeds.

6.          Immediately following the signing of this Order and until entry of the Final Order, the Debtors shall use the proceeds from the DIP Credit Facility in accordance with the DIP Loan Documents and this Order to fund (a) postpetition operating expenses of the Debtors incurred in the ordinary course of business and (b) working capital, capital expenditures, and other general corporate purposes of the Debtors strictly in accordance with the amounts and

-8-

categories set forth in the DIP Budget, attached hereto as **Exhibit A**. Actual expenditures may not be exactly the same as those projected in the DIP Budget, and the actual expenditures for the interim period covered by this Order for any category in any given two-week period may exceed the amounts set forth for such corresponding category in the DIP Budget, so long as the actual expenditures for such category do not exceed the amount in the DIP Budget for that category by fifteen percent (15%), as measured over a two-week period, and the actual total expenditures for all categories during such period do not exceed the DIP Budget by fifteen percent (15%), as measured over a two-week period.

DIP Secured Claims.

7.        Pursuant to section 364(d) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed secured claims against the Debtors (the "DIP Secured Claims"), which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve-Out (as defined and described below) to the extent specifically provided for herein; *provided, however*, the DIP Secured Claims shall not be payable from the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") and any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions ("Avoidance Proceeds").

8.        For purposes hereof, the "Carve-Out" means (i) the unpaid fees of the U.S. Trustee or the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930(a) and (b); and (ii) all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals or professional firms retained by the Debtors (including pursuant to section 363 of the Bankruptcy

#32674517 v1

Code) and any statutory committees appointed in the Chapter 11 Cases (each, a "Committee") in an amount not to exceed $300,000 in the aggregate (the "Carve-Out Amount") to the extent allowed by the Bankruptcy Court at any time; *provided*, that (w) the DIP Lender may at any time, in its sole and absolute discretion, agree to increase the Carve-Out Amount; (x) no portion of the Carve-Out shall be used, either directly or indirectly, for any services or expenses arising from or relating to the investigation, initiation, or prosecution of any action (a) contesting the validity, priority, or extent of the claims or Liens asserted by the DIP Lender or the Liens securing the Prepetition Loan, (b) asserting claims or causes of action of any sort whatsoever (including, without limitation, avoidance claims) against the DIP Lender or any Person affiliated with the DIP Lender, (c) preventing, hindering, or delaying the DIP Lender from enforcing any of its rights or remedies or realizing upon the assets that serve as collateral for the Obligations, or (d) seeking to modify any of the rights of the DIP Lender provided for in the DIP Loan Documents or under this Order or the Final Order; (y) as long as no Default or Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and such payments shall not reduce the Carve-Out; and (z) to the extent the dollar limitation in clause (ii) above is reduced as a result of payment of such fees and expenses during the continuation of an Event of Default, if such Event of Default is subsequently cured or waived, the limitation in clause (ii) above shall be increased by an amount equal to the amount by which it had so been reduced. Nothing in this paragraph 8 shall limit the amount of the Carve-Out for the unpaid fees of the U.S. Trustee or the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930(a) and (b) on account of the DIP Budget.

-10-

#32674517 v1

Grant of DIP Liens.

9.          As security for the DIP Obligations, effective and perfected upon the signing of this Order and without the necessity of the execution or recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the DIP Lender (all such liens and security interests granted to the DIP Lender pursuant to this Order and the DIP Loan Documents, the "DIP Liens"):

i.          Priming Lien on All of the Debtors' Encumbered Property. Pursuant to section 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior security interest in and lien upon or pledge of (subject to the Carve-Out) all pre- and postpetition encumbered property of the Debtors (collectively, the "DIP Collateral"), in each case to the extent subject only to the Permitted Liens; *provided, however*, that in each case, the priming lien upon or pledge of the Debtors' assets granted herein shall not include the Avoidance Actions and the Avoidance Proceeds.

ii.          First Lien on All of the Debtors' Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest and lien upon or pledge of all unencumbered property and assets of the Debtors; *provided, however*, that in each case, the first lien upon or pledge of the Debtors' assets granted herein shall not include the Avoidance Actions and the Avoidance Proceeds.

Protection of the DIP Lender's Rights.

10.          Upon entry of the Final Order, the DIP Lender shall not be subject to (a) the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the

#32674517 v1

DIP Collateral or (b) an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Lender with respect to proceeds, product, offspring, or profits of any of the DIP Collateral.

11.        The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon five (5) Business Days' notice to the Debtors, counsel to any Committee formed, and the U.S. Trustee of the occurrence of an Event of Default, all rights and remedies, including, without limitation, against the DIP Collateral, without the need for obtaining a further order of this Court. Notwithstanding the foregoing, the Debtors may continue to use cash in accordance with the DIP Budget until five (5) Business Days after notice of the occurrence of an Event of Default from the DIP Lender to the Debtors, counsel to any Committee formed, and the U.S. Trustee.  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by the Debtors in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors may not seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this Order or the DIP Loan Documents.

Perfection of DIP Liens.

12.        The DIP Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens,

-12-

mortgages, and security interests granted to it hereunder, such liens, mortgages, and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, or subordination, at the time and as of the date of the signing of this Order, and no further notice, filing, or other act shall be required to effect such perfection.  Upon the request of the DIP Lender, without any further consent of any party, the Debtors are authorized to take, execute, and deliver such instruments to enable the DIP Lender to further validate, perfect, preserve, and enforce the DIP Liens.  If the DIP Lender, in its sole discretion, chooses to file such mortgages, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar instruments shall be deemed to have been filed or recorded as of the date of the signing of this Order.  The rights granted under this paragraph are subject to any restrictions on such rights contained in the DIP Credit Agreement.

13.    A certified copy of this Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

14.    Any provision of any lease or other license, contract, or other agreement that requires the consent or approval of one or more landlords or other parties or the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting postpetition liens, in such leasehold interest or the

-13-

proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lender in accordance with the terms of the DIP Credit Agreement or this Order.

Use of Cash Collateral.

15.        Pursuant to the terms and conditions of this Interim Order and the DIP Loan Documents, and strictly in accordance with and as may be limited by the amounts and categories covered under the DIP Budget, the Debtors are authorized to use Cash Collateral, during the period commencing on the date hereof and continuing to and including the entry of the Final Order, for the payment of expenses incurred in the ordinary course of the Debtors' business. Actual expenditures may not be exactly the same as those projected in the DIP Budget, and the actual expenditures during the interim period covered by this Order for any category in any given two-week period may exceed the amounts set forth for such corresponding category in the DIP Budget, so long as the actual expenditures for such category do not exceed the amount in the DIP Budget for that category by fifteen percent (15%), as measured over a two-week period, and the actual total expenditures for all categories covered by such period do not exceed the DIP Budget by fifteen percent (15%), as measured over a two-week period.

Adequate Protection for Prepetition Lender.

16.        As adequate protection for the interest of the Prepetition Lender in the Debtors' encumbered property on account of the granting of the DIP Liens, subordination to the Carve-Out, and the Debtors' use of Cash Collateral, the Prepetition Lender shall receive adequate protection, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, in the form of replacement security interests and Liens in the DIP Collateral which shall be junior only to the Carve-Out, the DIP Credit Facility, and the Permitted Liens.

Preservation of Rights Granted Under the Order.

-14-

17.        No claim or lien having a priority superior to or *pari passu* with those granted by this Order shall be granted or allowed while any portion of the DIP Credit Facility (or any refinancing thereof) or the DIP Obligations remains outstanding.

18.        If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Secured Claims and DIP Liens granted to the DIP Lender pursuant to this Order shall continue in full force and effect and shall maintain their priming status as provided in this Order, as applicable, until all related DIP Obligations shall have been paid and satisfied in full (and that such DIP Secured Claims and DIP Liens, shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the DIP Secured Claims and DIP Liens referred to in (i) above.

19.        If any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacation shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification, or vacation or (ii) the validity or enforceability of any lien or priming status authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations. Notwithstanding any such reversal, stay, modification, or vacation, any DIP Obligations incurred by the Debtors to the DIP Lender prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification, or vacation shall be governed in all respects by the original provisions of this Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits

#32674517 v1

granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Loan
Documents with respect to all DIP Obligations.

20.      Except as expressly provided in this Order or in the DIP Loan
Documents, the DIP Liens, the DIP Secured Claims and all other rights and remedies of the DIP
Lender granted by the provisions of this Order and the DIP Loan Documents shall survive, and
shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the
Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating
the joint administration of these Chapter 11 Cases or by any other act or omission or (ii) the entry
of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to
section 1141(d)(4) of the Bankruptcy Code, the Debtors having waived any discharge as to any
remaining DIP Obligations.  The terms and provisions of this Order and the DIP Loan
Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11
Cases cease to be jointly administered, or in any superseding chapter 7 cases under the
Bankruptcy Code, and the DIP Liens, the DIP Secured Claims and all other rights and remedies
of the DIP Lender granted by the provisions of this Order and the DIP Loan Documents shall
continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

21.      Limitation on Use of DIP Credit Facility Proceeds and DIP Collateral.
Except with respect to the Investigation Fund, notwithstanding anything herein or in any other
order by this Court to the contrary, no borrowings, DIP Collateral or the Carve-Out may be used
to (i) object, contest, or raise any defense to, the validity, perfection, priority, extent, or
enforceability of any amount due under the DIP Loan Documents or the Prepetition Loan, or the
liens or claims granted under this Order, the DIP Loan Documents, or the Prepetition Liens, (ii)
assert any claims or defenses or causes of action against the DIP Lender, the Prepetition Lender,

-16-

#32674517 v1

or any of their respective agents, affiliates, representatives, attorneys, or advisors, (iii) prevent, hinder, or otherwise delay the DIP Lender's assertion, enforcement, or realization on the DIP Collateral in accordance with the DIP Loan Documents or this Order, or (iv) seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Loan Documents, in each of the foregoing cases without such parties' prior written consent.

22.      Failure to Seek Relief.  The DIP Lender's failure to seek relief or otherwise exercise its rights and remedies under the DIP Loan Documents or this Order shall not constitute a waiver of any of its rights and remedies hereunder, thereunder or otherwise.

23.      Amendments to the DIP Credit Facility.  The DIP Credit Agreement or any other DIP Loan Documents may from time to time be amended by the parties thereto without further order of this Court, in each case, in such form as the Debtors and the DIP Lender may agree (except for any modification or amendment to shorten the maturity of the extensions of credit thereunder, or increase the rate of interest payable thereunder, which shall require the approval of the Court); *provided, however*, that the agreement as so modified shall not be materially different from that approved; *provided further, however*, that notice of any such modification or amendment shall be filed with the Court and provided to the Committee, the U.S. Trustee, and any other party requesting notice in the Chapter 11 Cases, each of which will have seven (7) days from the date of such notice within which to object in writing; *provided further, however*, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court.

24.      Order Governs.  In the event of any inconsistency between the provisions of this Order and the DIP Loan Documents, the provisions of this Order shall govern.

-17-

25.     Binding Effect; Successors and Assigns.  The DIP Loan Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Lender, the Committee, if one is appointed, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Lender and the Debtors and their respective successors and assigns; *provided, however*, that the DIP Lender shall have no obligation to extend any DIP Credit Facility to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  Unless a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 21) constituting a Challenge (as defined below) by the earlier of (i) the date that is the earlier of (x) the date of entry of an order of this Court approving the sale of a substantial portion of the collateral securing the Prepetition Liens (the "Prepetition Collateral") and (y) the date that is seventy-five (75) days after entry of the Final Order (or, with respect to a Committee, sixty (60) days after the date of its formation), and (ii) if such a Challenge is brought, the date of a final judgment on such Challenge or, in each case, such later date (x) as has been agreed to, in writing, by the Prepetition Lender in its sole discretion or (y) as has been ordered by the Court (the "Challenge Period"), (i) challenging the validity, enforceability, priority or extent of the Prepetition Loan or the Prepetition Lender's liens on the Prepetition Collateral or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (clauses (i) and (ii), collectively, a "Challenge") against the Prepetition Lender or its representatives, attorneys or advisors in connection with matters related to the Prepetition Credit

-18-

Agreement, the Prepetition Collateral, and there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; *provided* that, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date, and *provided further*, that the Committee may use up to $10,000 (the "Investigation Fund") from the Carve-Out to investigate the liens and claims against the Prepetition Lender under the Prepetition Credit Agreement, but may not use the Investigation Fund to initiate, assert, join, commence, support, or prosecute any actions or discovery with respect thereto. If no such adversary proceeding or contested matter is timely filed, (a) the Prepetition Loan and all related obligations of the Prepetition Lender (the "Prepetition Obligations") shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases, (b) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance, and (c) the Prepetition Obligations, the Prepetition Liens, and the Prepetition Lender shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations, findings, and admissions contained in this Order relating to the Prepetition Loan and the Prepetition Liens shall nonetheless remain binding and preclusive on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing

-19-

or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Agreement or the Prepetition Obligations.

26.     The terms and conditions of this Order and the agreements referenced herein and any actions taken pursuant thereto shall survive (and shall not be discharged by) the filing of any subsequent case or proceedings for any of the Debtors or the entry of any order in the case of any of the Debtors confirming a consensual plan or any other plan of reorganization, dismissing any such case, converting any such case to any other chapter under the Bankruptcy Code, withdrawing the reference of any such case from this Court or abstaining from handling any such case.

27.     Final Hearing. The Final Hearing is scheduled for ~~February~~ Mach [ 19 ], 2015 at [ 3 ]:00 p.m. before this Court.

28.     Objections. The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (i) proposed co-counsel to the Debtors, McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173, (Attention: Timothy W. Walsh and Darren Azman); (ii) proposed co-counsel to the Debtors, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709 (Attention: Donald J. Detweiler and John H. Schanne II); (iii) counsel to the DIP Lender and the Prepetition Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attention: Debra A. Dandeneau); (iv) co-counsel to

-20-

the DIP Lender and the Prepetition Lender, Richards, Layton & Finger, P.A., One Rodney

Square, 920 North King Street, Wilmington, Delaware 19801 (Attention: Paul N. Heath and

Zachary I. Shapiro); (v) the Office of the United States Trustee for the District of Delaware, 844

King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attention: Tiiara N.A.

Patton), and (vi) proposed counsel to any Committee appointed, in each case so as to be received

no later than seven (7) days before the hearing date for the Final Hearing, set forth above.

        29.      Findings and Conclusions.  This Order shall constitute findings of fact

and conclusions of law and shall take effect and be fully enforceable upon all parties in interest

for all purposes immediately upon execution thereof.

Dated: February 4 , 2015
       Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

-21-