## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PRONERVE HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 15-10373 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket Nos.: 14, 96** |

**DEBTORS' RESPONSE TO OBJECTION AND RESERVATION OF RIGHTS
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING
USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION;
AND (IV) SCHEDULING A FINAL HEARING**

ProNerve Holdings, LLC and each of its wholly-owned direct and indirect subsidiaries,

as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned

chapter 11 cases (these "Chapter 11 Cases"), hereby submit this response to the *Objection and*

*Reservation of Rights of the Official Committee of Unsecured Creditors to Debtors' Motion for*

*Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II)*

*Authorizing Use of Cash Collateral; (III) Granting Adequate Protection; and (IV) Scheduling a*

*Final Hearing* [Docket No. 96] (the "Objection"), and respectfully state as follows:[2]

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: ProNerve
Holdings, LLC (1653); ProNerve, LLC (2155); Boulder Intraoperative Monitoring, LLC (9147); Colorado
Intraoperative Monitoring, LLC (5837); Denver South Intraoperative Monitoring, LLC (3164);  Eugene
Intraoperative Monitoring, LLC (0718); ProNerve Technologies, LLC (1814); Riverside Intraoperative Monitoring,
LLC (6963); and Topeka Intraoperative Monitoring, LLC (6151).  The location of the Debtors' corporate
headquarters and the service address for all Debtors is 7600 E. Orchard Road, Suite 200 N, Greenwood Village,
Colorado 80111.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *Debtors' Motion for
Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Use of
Cash Collateral; (III) Granting Adequate Protection; and (IV) Scheduling a Final Hearing* [Docket No. 14] (the
"DIP Motion").

## PRELIMINARY STATEMENT

1.      In the Objection, the Committee makes vague and unfounded allegations and

arguments in an unabashed attempt to squeeze money from the Debtors' estates (in large part for

the Committee's professionals' pockets).  Unfortunately for the Committee and its professionals,

the well is dry.

2.      The alleged inadequacies in the Final DIP Order raised by the Committee can be

summarized as follows:

- The time period for the Committee to investigate SpecialtyCare's liens (the "Liens") on prepetition and postpetition collateral is too short.

- The requirement that the Committee seek standing to challenge the Liens is "unreasonable."

- The cap on the Committee's professional fees to investigate the Liens is too small.

- The budget for the Committee's professional fees, in general, is too small.

- The Debtors' waiver of rights under Bankruptcy Code 552(b) and the doctrine of marshaling "overreaches."

3.      Each of the foregoing issues is addressed in turn below.  At the outset, the

Debtors note that despite the Committee's statement to the contrary in paragraph 5 of the

Objection, the Debtors and SpecialtyCare provided the Committee with all documentation

related to the Liens, including the credit agreement with schedules and exhibits (including

amendments), the guaranty and security agreement, the forbearance agreements, and the UCC

filings.[3]  The foregoing documents were sent to the Committee on March 9, 2015, the day on

which the Committee selected its counsel.  The Committee has not provided the Debtors (or this

---

[3] These documents were also submitted into evidence at the hearing before this court on March 11, 2015 (the "Bid Procedures Hearing").

#33003582 v1

Court in the Objection) a list of additional documents that the Committee believes are necessary

for its analysis and that the Committee has not received.

### RESPONSE

**A.      The Challenge Period is Reasonable Under the Circumstances.**

4.      The Committee argues that the Final DIP Order contravenes Local Rule 4001-2(a)(i)(B) because the Committee's deadline to investigate or challenge the Liens may occur earlier than 60 days after the formation of the Committee.

5.      First, the Local Rules do not require any specific length of time for the Committee to investigate or challenge the Liens.  Rather, the Local Rules require the Debtors to highlight certain information in the motion seeking approval of debtor in possession financing, which the Debtors have done.

6.      Second, the Committee's statements regarding "certain issues associated with the breadth of Specialty Care's prepetition liens," Objection ¶ 5, completely lacks substance, and the Committee has failed to articulate any actual issues.  There are no issues with the Liens.  Further, the Committee has not provided any information (or even any coherent argument) as to why the so-called "upstream guarantees" might be "fraudulent," Objection ¶ 25, and what effect, if any, that would have on unsecured creditors.  The Inactive Subsidiaries do not have any active business operations, and have only *de minimis* assets and liabilities.  *Declaration of George D. Pillari in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 3] ¶ 16.

7.      Third, this Court has already approved bidding procedures providing that SpecialtyCare "shall be entitled to credit bid all or a portion of the aggregate principal amount of the Loan Commitments and the DIP Facility . . . ."  Although the Committee reserved its rights

#33003582 v1

to challenge the bidding procedures, including SpecialtyCare's credit bid, as a practical matter the Committee would need to file an objection prior to the auction.  Assuming that this Court approves the sale to SpecialtyCare, it is unclear what, if any, benefit could be gained by the Committee from further investigating or challenging the Liens after the sale is approved.

8.      The Committee also argues that it should be granted standing to challenge the Liens.  Objection ¶ 28.  If the Committee can demonstrate a *prima facie* case regarding a challenge to the Liens, it will have the opportunity to present such argument to this Court.  However, the Committee would first need to demonstrate that (i) it has alleged a colorable claim that would benefit the estate; (ii) the Debtors have unjustifiably refused to pursue the claim; and (iii) the Committee has obtained permission from the bankruptcy court to initiate the action on behalf of the Debtors' estates.  *See, e.g.*, *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532, 543 (W.D. Pa. 2005); *Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 145 (D. Del. 2004).  It is the creditor's burden in the first instance to demonstrate that it has satisfied these prerequisites for derivative standing.  *In re G-I Holdings, Inc.*, 313 B.R. 612, 628 (Bankr. D. N.J. 2004).

9.      At this time, there is no reason or basis for the Debtors or this Court to grant the Committee standing to challenge the Liens given that the Committee has not articulated a single fact (let alone a "colorable claim") that suggests there are issues with the Liens.

**B.      The Committee Investigation Budget is Reasonable.**

10.     The Committee states that the "Debtors' prepetition financing transactions are relatively complex."  Objection ¶ 29.  As with the Committee's other statements in the Objection, this statement is conclusory and unsubstantiated.  If the Committee believes the

prepetition transaction is so complex—which it is not—it should state its foundation for such belief.

11.     The credit agreement and related documents are plain vanilla and straightforward. Having had ten days to review the credit documents, the Committee should now be in a position to provide at least some level of detail as to what objections, if any, it may raise with respect to the Liens.

12.     The Committee's investigation budget is in line with other investigation budgets approved by this Court in other chapter 11 cases, when considered in the context of the size of liens to be challenged.  For example, this Court has approved budgets of $50,000 for committee investigations where the prepetition liens were three to four times the size of the Liens at issue in these Chapter 11 Cases.  *See, e.g.*, *In re Brookstone Holdings Corp.*, Case No. 14-10752 (Bankr. D. Del. Apr. 25, 2014) [Docket No. 245] (approving budget of $50,000 for committee to investigate prepetition liens of approximately $173 million); *In re The Dolan Company*, Case No. 14-10614 (Bankr. D. Del. Apr. 17, 2014) [Docket No. 22] (approving budget of $50,000 for committee to investigate prepetition liens of approximately $153.5 million).  And in at least one case, this Court has approved a budget of $25,000 for a committee investigation where the prepetition liens were approximately four times the size of the Liens in these Chapter 11 Cases. *In re Event Rentals, Inc.*, Case No. 14-10282 (Bankr. D. Del. Apr. 1, 2014) [Docket No. 277] (approving budget of $25,000 for committee to investigate prepetition liens of approximately $170 million).

**C.      The Professional Fee Budget Does Not Prejudice the Committee.**

13.     The Committee argues that a $50,000 budget is insufficient "given the size and complexities of these cases."  Objection ¶ 30.

14.      First, these Chapter 11 Cases are straightforward and are proceeding to an expedited sale process for all of the reasons stated at the Bid Procedures Hearing.  Again, the Committee has not identified any reason why these Chapter 11 Cases are complex.  The Committee has also failed to provide any support for its statement in paragraph 30 of the Objection that there were "insider dealings" related to the prepetition credit agreement.

15.      Second, the Committee states that the "budgeted fees of the Committee's counsel are less than 6% of the fees for the Debtors' team."  Objection ¶ 30.  This is a gross mischaracterization of reality.  The Committee fails to understand that Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") has not been engaged as the Debtors' financial advisor or investment banker.  Rather, A&M personnel are acting in various roles as the Debtors' senior management, including CEO, CRO, CFO, and several Vice Presidents, among others.  Thus, it is improper to compare the Committee's budget to A&M's budget for operating all aspects of the Debtors' operations during these Chapter 11 Cases.  It is equally improper to compare the Committee's budget to the budget for the Debtors' claims and noticing agent given that the Committee has no need to retain such a professional.

16.      Third, the Debtors do not expect that unsecured creditors in these Chapter 11 Cases will be entitled to any distribution.  Nonetheless, SpecialtyCare has generously agreed to (i) leave behind chapter 5 avoidance actions for unsecured creditors, (ii) provide $790,000 for wind-down costs, a portion of which may be made available for distribution to unsecured creditors, (iii) leave behind any portion of the $900,000 pre-closing professional fee budget that remains, and (iv) subordinate its deficiency claim to the portion of the $1.69 million in cash remaining after payment of professional fees and wind-down costs.

#33003582 v1

17.     The Debtors also note that SpecialtyCare is providing new money to the Debtors—there is no roll-up of the prepetition debt.  The Committee should not be permitted to take advantage of SpecialtyCare's offer, which is more than fair under the circumstances.

18.     The Committee attempts to demonstrate the "unreasonableness" of its budget by comparing it to the amounts sought to be paid by the Debtors to ordinary course professionals. Putting aside the obvious fallacy of this comparison, the Debtors' motion seeking to employ ordinary course professionals inadvertently provided for a $70,000 per month cap for each ordinary course professional.  The Debtors intended to seek an aggregate cap of $70,000 per month for all ordinary course professionals.  The Debtors have adjourned the hearing on the ordinary course professionals motion and intend to file an amended motion and proposed order.

19.     The Committee offers no specific information or analysis to support its objections to the Committee's budget.  The amounts set forth in the budget were negotiated extensively by the Debtors and SpecialtyCare.  After these extensive negotiations and internal analysis, the Debtors are comfortable that the budget provides them with sufficient funds to operate during these Chapter 11 Cases.  The Committee has not offered any specific evidence to the contrary, and the Objection should be overruled.

**D.      The Debtors' Waiver of Rights Under Bankruptcy Code Section 552(b) and the Doctrine of Marshalling is Proper.**

20.     The Committee takes issue with the Debtors' waiver of rights under Bankruptcy Code section 552(b) and the doctrine of marshalling.  Yet, these types of waivers are routinely granted by this Court in chapter 11 cases, especially where, such as in these Chapter 11 Cases, a debtor had no ability to obtain debtor in possession financing from a source other than the prepetition lender.  *See, e.g.*, *In re Brookstone Holdings Corp.*, Case No. 14-10752 (Bankr. D. Del. Apr. 25, 2014) [Docket No. 245]; *In re The Dolan Company*, Case No. 14-10614 (Bankr. D.

- 7 -

Del. Apr. 17, 2014) [Docket No. 22]; *In re Event Rentals, Inc.*, Case No. 14-10282 (Bankr. D. Del. Apr. 1, 2014) [Docket No. 277].

21.     Courts have generally adopted a narrow interpretation of the "equities of the case" exception that precludes its application where a lender's cash collateral (or postpetition financing) is required to preserve the value of a debtor's assets. *See In re Muma Servs., Inc.*, 322 B.R. 541, 559 (Bankr. D. Del. 2005) (holding that the "equities of the case" exception did not apply where, among other things, the debtor was only able to operate and maintain the value of its assets through the use of a lender's cash collateral plus additional postpetition financing). Accordingly, because the Debtors require the use of cash collateral and financing from SpecialtyCare to continue in operation and maintain the value of their assets, a waiver of the "equities of the case' exception is appropriate.

22.     Additionally, the Committee states that its "investigation to date indicates that certain assets may be unencumbered."  Objection ¶ 35.  The Debtors are not aware of any unencumbered assets that belong to the Debtors' estates.  If the Committee has reason to believe that such assets exist, it should provide this Court with something more than a vague allegation that is unsupported in the record.

#33003582 v1

WHEREFORE, the Debtors respectfully request that this Court enter the Final DIP Order

and grant such other and further relief as the Court deems appropriate.


Dated: March 17, 2015            Respectfully submitted,
      Wilmington, Delaware

  /s/ Donald J. Detweiler
PEPPER HAMILTON LLP
Donald J. Detweiler (DE No. 3087)
John H. Schanne II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone:     (302) 777-6500
Facsimile:     (302) 421-8390
Email:     detweilerd@pepperlaw.com
     schannej@pepperlaw.com

-and-

MCDERMOTT WILL & EMERY LLP
Timothy W. Walsh (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
340 Madison Avenue
New York, New York 10173-1922
Telephone:     (212) 547-5400
Facsimile:     (212) 547-5444
Email:     twwalsh@mwe.com
     dazman@mwe.com

*Proposed Counsel to the Debtors and Debtors in Possession*

#33003582 v1