## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PRONERVE HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 15-10373 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' COMBINED DISCLOSURE STATEMENT
## AND CHAPTER 11 PLAN OF LIQUIDATION

Dated: Wilmington, Delaware
      June 24, 2015

<div style="margin-left:40%">

PEPPER HAMILTON LLP
Donald J. Detweiler
John H. Schanne
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302) 777-6500

MCDERMOTT WILL & EMERY LLP
Timothy W. Walsh (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
340 Madison Avenue
New York, New York 10173-1922
Telephone: (212) 547-5400

*Counsel to the Debtors and Debtors in Possession*

</div>

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: ProNerve Holdings, LLC (1653); ProNerve, LLC (2155); Boulder Intraoperative Monitoring, LLC (9147); Colorado Intraoperative Monitoring, LLC (5837); Denver South Intraoperative Monitoring, LLC (3164); Eugene Intraoperative Monitoring, LLC (0718); ProNerve Technologies, LLC (1814); Riverside Intraoperative Monitoring, LLC (6963); and Topeka Intraoperative Monitoring, LLC (6151). The location of the Debtors' corporate headquarters and the service address for all Debtors is 7600 E. Orchard Road, Suite 200 N, Greenwood Village, Colorado 80111.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 2

II.   DEFINITIONS AND CONSTRUCTION OF TERMS ..................................... 3

    A.    Definitions ................................................................................................. 3

        1.    "Administrative Expense Bar Date" ............................................. 3

        2.    "Administrative Expense Claim" ................................................. 3

        3.    "Allowed" ..................................................................................... 3

        4.    "Bankruptcy Code" ...................................................................... 3

        5.    "Bankruptcy Court or Court" ...................................................... 4

        6.    "Bankruptcy Exceptions" ............................................................ 4

        7.    "Bankruptcy Rules" ..................................................................... 4

        8.    "Bar Date" .................................................................................... 4

        9.    "Business Day" ............................................................................. 4

        10.   "Cash" ...........................................................................................

        11.   "Cash on Hand" ........................................................................... 4

        12.   "Causes of Action" ...................................................................... 4

        13.   "Chapter 11 Cases" ...................................................................... 5

        14.   "Claim" ......................................................................................... 5

        15.   "Claims and Balloting Agent" ..................................................... 5

        16.   "Claims Objection Deadline" ...................................................... 5

        17.   "Class" .......................................................................................... 5

        18.   "Clerk" .......................................................................................... 5

        19.   "Charity" ....................................................................................... 5

        20.   "COD" ........................................................................................... 5

        21.   "Combined Plan and Disclosure Statement" ............................... 5

        22.   "Committee" ................................................................................. 5

        23.   "Confirmation Date" .................................................................... 6

        24.   "Confirmation Hearing" ............................................................... 6

        25.   "Confirmation Order" ................................................................... 6

        26.   "Creditor" ..................................................................................... 6

        27.   "Debtors" ...................................................................................... 6

## TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 28. | "DIP Credit Agreement" | 6 |
| 29. | "DIP Financing" | 6 |
| 30. | "DIP Financing Order" | 7 |
| 31. | "DIP Financing Budget" | |
| 32. | "Disputed" | 7 |
| 33. | "Distribution" | 7 |
| 34. | "Docket" | 7 |
| 35. | "Effective Date" | 7 |
| 36. | "Entity" | 7 |
| 37. | "Equity Interests" | 7 |
| 38. | "Estates" | 7 |
| 39. | "Executory Contract" | 7 |
| 40. | "File, Filed, or Filing" | 8 |
| 41. | "Filing Date" | 8 |
| 42. | "Final Order" | 8 |
| 43. | "Governmental Unit" | 8 |
| 44. | "GUC Distribution Fund" | |
| 45. | "Holder" | 8 |
| 46. | "IRS" | 8 |
| 47. | "Non-United States Person" | 8 |
| 48. | "Order" | 8 |
| 49. | "Other Priority Claim" | 8 |
| 50. | "Priority Tax Claim" | 9 |
| 51. | "Person" | 9 |
| 52. | "Plan Administrator" | 9 |
| 53. | "Prepetition Credit Agreement | |
| 54. | "Professional" | 9 |
| 55. | "Professional Claims" | |
| 56. | "Pro Rata" | 9 |
| 57. | "Released Parties" | |

## TABLE OF CONTENTS
(continued)

"Remaining Assets" ................................................................................

58. "Schedules" ....................................................................... 9

59. "Sale" ............................................................................... 9

60. "Sale Motion" ................................................................... 9

61. "Sale Order" ................................................................... 10

62. "Tax Code" ..................................................................... 10

63. "Unclaimed Distribution" ................................................

64. "Unclaimed Distribution Deadline" ................................

65. "Unsecured Claim" ........................................................ 10

B. Interpretation; Application of Definitions and Rules of Construction ............... 10

III. BACKGROUND AND DISCLOSURES ......................................................... 11

A. Debtors' Organizational Structure ......................................... 11

B. Description of the Debtor's Business as of the Filing Date ................. 11

C. The Debtors' Pre-Petition Indebtedness ................................... 11

D. Events Precipitating the Chapter 11 Filing .............................. 11

E. The Chapter 11 Case ............................................................ 11

1. First Day Motions and Orders ............................... 12

2. Employment and Compensation of Professionals and Advisors ............. 12

3. Appointment of Committee ................................... 12

4. Claims Process and Bar Date ................................ 12

5. The Sale of Substantially All of the Debtors' Assets .............. 13

F. Certain Federal Income Tax Consequences ................................ 14

1. Tax Consequences to the Debtors ........................... 15

2. Tax Consequences to Creditors .............................. 16

3. Importance of Obtaining Professional Tax Assistance ............. 18

G. Certain Risk Factors To Be Considered ................................... 18

1. Risk of Non-Confirmation of Combined Plan and Disclosure Statement .............. 18

2. Delays of Confirmation and/or Effective Date ................... 19

3. Alternative Plan .............................................. 19

**TABLE OF CONTENTS**
(continued)

<div align="right">Page</div>

| | | | |
|---|---|---|---|
| IV. | | SUMMARY OF DEBTORS' ASSETS; SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES ................................................ 19 | |
| | A. | Summary of Assets ................................................ 19 | |
| V. | | CONFIRMATION AND VOTING PROCEDURES ................................................ 20 | |
| | A. | Confirmation Procedure ................................................ 20 | |
| | | 1. | Confirmation Hearing ................................................ 20 |
| | | 2. | Procedure for Objections ................................................ 21 |
| | | 3. | Requirements for Confirmation ................................................ 21 |
| | | 4. | Classification of Claims and Equity Interests ................................................ 22 |
| | | 5. | Impaired Claims or Equity Interests ................................................ 22 |
| | | 6. | Eligibility to Vote on the Combined Plan and Disclosure Statement ...... 23 |
| | | 7. | Solicitation Notice ................................................ 23 |
| | | 8. | Procedure/Voting Deadlines ................................................ 24 |
| | | 9. | Acceptance of the Combined Plan and Disclosure Statement ................................................ 25 |
| VI. | | TREATMENT OF UNCLASSIFIED CLAIMS ................................................ 26 | |
| | A. | Administrative Expense Bar Date ................................................ 26 | |
| | B. | Administrative Expense Claims ................................................ 26 | |
| | C. | Priority Tax Claims ................................................ 27 | |
| | D. | Payment of Statutory Fees ................................................ 27 | |
| VII. | | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; ESTIMATED RECOVERIES ................................................ 27 | |
| VIII. | | TREATMENT OF CLAIMS AND EQUITY INTERESTS ................................................ 28 | |
| | A. | Treatment of Claims ................................................ 28 | |
| | | 1. | CLASS 1 – SPECIALTYCARE DEFICIENCY CLAIMS ................................................ 28 |
| | | 2. | CLASS 2 – OTHER SECURED CLAIMS ................................................ 28 |
| | | 3. | CLASS 3 – OTHER PRIORITY CLAIMS ................................................ 29 |
| | | 4. | CLASS 4 – UNSECURED CREDITORS ................................................ 30 |
| | | 5. | CLASS 5 – EQUITY INTERESTS ................................................ 30 |
| | B. | Modification of Treatment of Claims and Equity Interest ................................................ 31 | |
| IX. | | PROVISIONS REGARDING THE PLAN ADMINISTRATOR ................................................ 31 | |
| | A. | Appointment of the Plan Administrator ................................................ 31 | |

**TABLE OF CONTENTS**
(continued)

Page

|   | B. | Rights and Powers of the Plan Administrator | 31 |
|---|----|----|----|
|   | C. | Post Confirmation Date Expenses of the Plan Administrator | 32 |
| X. | | PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT | 32 |
|   | A. | Method of Payment | 32 |
|   | B. | Objections to and Resolution of Claims | 33 |
|   | C. | Claims Objection Deadline | 33 |
|   | D. | No Distribution Pending Allowance | 33 |
|   | E. | Escrow of Cash Distributions | 33 |
|   | F. | Distribution After Allowance | 34 |
|   | G. | Investment of Segregated Cash and Property | 34 |
|   | H. | Delivery of Distributions | 34 |
|   | I. | Unclaimed Distributions | 35 |
|   | J. | Set-Off | 36 |
| XI. | | IMPLEMENTATION AND EFFECT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT | 36 |
|   | A. | Means for Implementation of the Combined Plan and Disclosure Statement | 36 |
|   |   | 1. Funding of Liabilities and Distributions | 36 |
|   |   | 2. Corporate Action; Effectuating Documents; Further Transactions | 36 |
| XII. | | INJUNCTION, EXCULPATION AND RELEASES | 37 |
|   | A. | Injunction | 37 |
|   | B. | Exculpation | 38 |
|   | C. | Releases | 40 |
|   |   | 1. Terms of Releases | 40 |
|   |   | 2. Matters Excluded From Release | 41 |
| XIII. | | CAUSES OF ACTION | 43 |
|   | A. | Causes of Action | 43 |
| XIV. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 44 |
|   | A. | Rejection of Executory Contracts and Unexpired Leases | 44 |

# TABLE OF CONTENTS
(continued)

|      | B.   | Deadline for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Combined Plan and Disclosure Statement | 44 |
| XV.  |      | CONDITIONS TO THE EFFECTIVE DATE | 44 |
|      | A.   | Conditions Precedent to the Effective Date | 44 |
|      | B.   | Effect of Failure of Conditions | 45 |
|      | C.   | Waiver of Conditions to Confirmation and Effective Date | 45 |
| XVI. |      | RETENTION OF JURISDICTION | 46 |
| XVII.|      | MISCELLANEOUS PROVISIONS | 48 |
|      | A.   | Amendment or Modification of the Combined Plan and Disclosure Statement | 48 |
|      | B.   | Severability | 48 |
|      | C.   | Revocation or Withdrawal of the Combined Plan and Disclosure Statement | 49 |
|      | D.   | Binding Effect | 49 |
|      | E.   | Notices | 49 |
|      | F.   | Governing Law | 49 |
|      | G.   | Withholding and Reporting Requirements | 50 |
|      | H.   | Allocation of Distributions Between Principal and Interest | 50 |
|      | I.   | Headings | 50 |
|      | J.   | Exhibits/Schedules | 50 |
|      | K.   | Filing of Additional Documents | 50 |
|      | L.   | No Admissions | 51 |
|      | M.   | Successors and Assigns | 51 |
|      | N.   | Reservation of Rights | 51 |
|      | O.   | Implementation | 51 |
|      | P.   | Inconsistency | 51 |
|      | Q.   | Closing of Chapter 11 Case | 52 |
|      | R.   | Dissolution of the Debtors | 52 |
|      | S.   | Dissolution of the Committee | 52 |
|      | T.   | Compromise of Controversies | 52 |

## NOTICE

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

# I.

## INTRODUCTION[2]

The Debtors in these Chapter 11 Cases hereby propose their Combined Plan and Disclosure Statement pursuant to sections 1125 and 1129 of the Bankruptcy Code. The Debtors are the proponents of the Combined Plan and Disclosure Statement within the meaning of section 1129 of the Bankruptcy Code.

The Combined Plan and Disclosure Statement constitutes a liquidating chapter 11 plan for the Debtors. The Combined Plan and Disclosure Statement provides for the proceeds from the Debtors' assets already liquidated or to be liquidated over time to be distributed to holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions of the Bankruptcy Code. Except as otherwise provided by Order of the Bankruptcy Court, Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter. All of the Debtors except for the Remaining Debtors will be dissolved as soon as practicable on or after the Effective Date. At such time as determined by the Plan Administrator to be appropriate, the Plan Administrator may cause the existence of the Remaining Debtors to be terminated by dissolution or as otherwise permitted by applicable law, all on such terms as the Plan Administrator determines to be necessary or appropriate to implement the Combined Plan and Disclosure Statement and all without further order of the Bankruptcy Court. The Plan Administrator may effectuate such terminations in accordance with applicable law, without further order of the Bankruptcy Court and cause the Remaining Debtors to adopt any plan and execute, deliver and file any agreement or document the Plan Administrator determines to be necessary and appropriate.

---

[2] All capitalized terms not defined in this introduction shall have the same meanings set forth in Article II of the Combined Plan and Disclosure Statement.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XV of the Combined Plan and Disclosure Statement, the Debtors and the Plan Administrator, as applicable, expressly reserve the right to alter, amend or modify the Combined Plan and Disclosure Statement, one or more times, before its substantial consummation.

## II.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions.

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.    "**A&M**"  means Alvarez & Marsal Healthcare Industry Group, LLC.

2.    "**Administrative Expense Bar Date**" means May 29, 2015 for an Administrative Expense Claim arising from the Filing Date through and including May 22, 2015, excluding Professional Claims, and for an Administrative Expense Claim arising after May 22, 2015, including Professional Claims, means the Business Day that is 30 days after the Effective Date.

3.    "**Administrative Expense Claim**" means any right to payment constituting actual and necessary costs and expenses of preserving the Estates under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation (a) Professional Claims, (b) any fees or charges assessed against the Estates under section 1930 of chapter 123 of Title 28 of the United States Code, and (c) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

4.    "**Affiliated Practices**"  means (i) Bruce A. Lockwood, M.D., Inc., a California corporation, (ii) Bruce A. Lockwood, M.D. II, Inc., a California corporation, (iii) ProNerve Physicians (GA), LLC, a Georgia limited liability company, (iv) ProNerve Physicians (IL), LLC, an Illinois limited liability company, (v) ProNerve Physicians (IN), LLC, an Indiana limited

- 3 -

liability company, (vi) ProNerve Physicians (NJ), LLC, a New Jersey limited liability company, (vii) Pro Physician (NY), LLC, a New York limited liability company, and (viii) ProNerve Physicians (WI), Ltd., a Wisconsin corporation.

5.     "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is listed by the Debtors in the Schedules, as liquidated in amount and not disputed or contingent and, in each case, as to which: (A) no objection to allowance has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the Bankruptcy Court, or (B) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

6.     "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time.

7.     "**Bankruptcy Court or Court**" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases, or if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the District of Delaware.

8.     "**Bankruptcy Exceptions**" means the exception to the recognition of COD Income under section 108(a)(l)(A) of the Tax Code when a taxpayer discharging indebtedness is under the jurisdiction of a court in a case under the Bankruptcy Code and when the discharge is granted, or is effected pursuant to a plan approved, by a United States Bankruptcy Court.

9.      "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended from time to time.

10.     "**Bar Date**" means May 29, 2015 at 4:00 p.m. Eastern Time, except as to Claims held by Governmental Units, for which the Bar Date is August 24, 2015 at 4:00 p.m. Eastern Time.

11.     "**Business Day**" means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

12.     "**Cash**" means legal tender of the United States of America and equivalents thereof.

13.     "**Cash on Hand**" means the $1,690,000 in Cash held by the Debtors' Estates as of the closing of the Sale.

14.     "**Causes of Action**" means all Claims and causes of action now owned or hereafter acquired by the Debtors, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, any causes of action arising under Chapter 5 of the Bankruptcy Code.

15.     "**Charity**" means any non-profit organization whose primary purpose is the pursuit of philanthropic endeavors that may be selected by the Plan Administrator at its sole discretion.

16.     "**Chapter 11 Cases**" means the procedurally consolidated cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled as ProNerve Holdings, LLC, *et al.*, under Case No. 15-10373 (KJC), currently pending in the Bankruptcy Court.

- 5 -

17.     "**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

18.     "**Claims and Balloting Agent**" means the Garden City Group LLC.

19.     "**Claims Objection Deadline**" means one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

20.     "**Class**" means any group of substantially similar Claims or Equity Interests classified by the Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

21.     "**Clerk**" means the clerk of the Bankruptcy Court.

22.     "**Closing Date**" means April 14, 2015.

23.     "**COD**" means cancellation of indebtedness.

24.     "**Combined Plan and Disclosure Statement**" means this combined disclosure statement and Chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

25.     "**Committee**" means the Official Committee of Unsecured Creditors appointed by the UST.

26.     "**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket.

27.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider (i) approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the

Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

28.     "**Confirmation Order**" means the Order of the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.

29.     "**Consummation Date**" means September 22, 2015.

30.     "**Creditor**" means any Person that is the Holder of a Claim against a Debtor.

31.     "**Debtors**" means Holdings, ProNerve, LLC, Boulder Intraoperative Monitoring, LLC, Colorado Intraoperative Monitoring, LLC, Denver South Intraoperative Monitoring, LLC, Eugene Intraoperative Monitoring, LLC, ProNerve Technologies, LLC, Riverside Intraoperative Monitoring, LLC, and Topeka Intraoperative Monitoring, LLC.

32.     "**DIP Credit Agreement**" means that Debtor in Possession Credit Agreement dated as of February 24, 2015 by and between SpecialtyCare and the Debtors, as the same may be further amended, modified, ratified, extended, renewed, restated or replaced.

33.     "**DIP Financing**" means the financing facility provided to the Debtors pursuant to the terms of the DIP Credit Agreement and DIP Financing Order.

34.     "**DIP Financing Order**" means the Court's *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing the Use of Cash Collateral; and (III) Granting Adequate Protection* [Docket No. 115] entered March 20, 2015.

35.     "**DIP Financing Budget**" means the form of budget approved pursuant to the DIP Financing Order and attached thereto as Exhibit A, as amended pursuant to any other Order of the Court, including the *Order (I) Authorizing the Retention and Employment of Carl Marks Advisory Group LLC Nunc Pro Tunc to March 24, 2015, as Financial Advisors to the Committee*

*and (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-2(h)* [Docket No. 235].

36.     "**Disputed**" means any Claim that is listed on the Schedules as disputed, contingent or unliquidated, or which is objected to in whole or in part in accordance with Article IX of the Combined Plan and Disclosure Statement, or otherwise.

37.     "**Distribution**" means any distribution to the Holders of Allowed Claims.

38.     "**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

39.     "**Effective Date**" means the date on which the conditions specified in Article XIII of the Combined Plan and Disclosure Statement have been satisfied or waived.

40.     "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

41.     "**Equity Interests**" means all equity interests in the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding shares or membership interests together with any warrants, options or contract rights to purchase or acquire such interests at any time.

42.     "**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

43.     "**Exculpated Parties**" means, collectively and individually, (i) the Committee and its members, attorneys, accountants, agents and other professionals, (ii) the Plan Administrator, and (iii) the Oversight Committee and its member(s).

44.     "**Executory Contract**" means any executory contract or unexpired lease as of the Filing Date between any of the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Combined Plan and Disclosure Statement.

45.     "**File, Filed, or Filing**" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

46.    "**Filing Date**" means February 24, 2015.

47.    "**Final Order**" means an order of the Bankruptcy Court or a Court of competent

jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed,

modified or amended and as to which the time to appeal, to petition for certiorari, or to move for

reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other

proceedings for reargument or rehearing shall then be pending.

48.    "**GECC**"  means General Electric Capital Corporation, as agent under the

Prepetition Credit Agreement.

49.    "**General Unsecured Claim**" means any Claim against the Debtors that arose or

is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen

before the Filing Date and that is not a SpecialtyCare Subordinated Deficiency Claim, Other

Secured Claim, Administrative Expense Claim, Priority Tax Claim or Other Priority Claim.

50.    "**Governmental Unit**" shall have the meaning set forth in section 101(27) of the

Bankruptcy Code.

51.    "**Holder**" means the beneficial holder of any Claim or Equity Interest.

52.    "**Holdings**"  means ProNerve Holdings, LLC.

53.    "**Intercompany Claims**"  means any Claim by a direct or indirect subsidiary, a

direct or indirect parent, or an affiliate of any Debtor, against any Debtor.

54.    "**IOM Services**"  means intraoperative neurophysiologic monitoring services.

55.    "**IRS**" means the Internal Revenue Service.

56.    "**Loan Commitments**"  means the (i) term loans in the aggregate principal

amount of $30 million, (ii) delayed draw term loans in an aggregate principal amount not to

exceed $10 million, and (iii) revolving loans in an aggregate principal amount not to exceed $10 million, all of which were extended pursuant to the Prepetition Credit Agreement.

57.    "**Local Rules**"  means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

58.    "**Non-United States Person**" means a Holder of a Claim that is not subject to either federal or state income taxation unless such Holder is (i) engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

59.    "**Other Priority Claim**" means a Claim that is entitled to priority in payment under section 507 of the Bankruptcy Code other than a Priority Tax Claim.

60.    "**Other Secured Claim**" means a Claim that is secured by any assets of the Debtors other than a Claim in Class 4.

61.    "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Docket.

62.    "**Oversight Committee**"  means the Committee established pursuant to Article VIII.D of this Combined Plan and Disclosure Statement.

63.    "**Priority Tax Claim**" means a Claim that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

64.    "**Person**" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

65.    "**Plan Administrator**" means the Person appointed pursuant to Article VIII of the Combined Plan and Disclosure Statement.

66.    "**Prepetition Credit Agreement**" means that certain Credit Agreement, dated December 20, 2012, between the Debtors, certain affiliated practice entities, GECC, as agent, and GECC and Regions Capital Markets, as lenders, among others.

67.    "**Professional**" means any professional Person employed in the Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code pursuant to an Order of the Bankruptcy Court and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code.

68.    "**Professional Claims**" means all claims for compensation and reimbursement of expenses by Professionals to the extent Allowed by the Bankruptcy Court.

69.    "**ProNerve**" means ProNerve, LLC.

70.    "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in the same Class.

71.    "**Remaining Assets**" means all of the assets held by the Debtors' Estates after closing of the Sale, including, without limitation, the Cash on Hand, Unsecured Claims Distribution Fund and Causes of Action.

72.    "**Remaining Debtors**" means Holdings and ProNerve.

73.    "**Schedules**" means the schedules of assets and liabilities, the list of Holders of Equity Interests and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto.

74.    "**Sale**" means the sale of substantially all of the Debtors' assets to SpecialtyCare pursuant to the Sale Motion.

75.    "**Sale Agreement**" means the Asset Purchase Agreement by and among SpecialtyCare and the sellers named therein dated February 24, 2015.

76.    "**Sale Hearing**" means the hearing in these Chapter 11 Cases that occurred before the Court on April 10, 2015.

77.    "**Sale Motion**" means the *Debtors' Motion for Entry of (A) a Bidding Procedures Order (I) Approving the Bidding Procedures, (II) ratifying the Sellers' Entry into the Stalking Horse Agreement, (III) Authorizing the Payment of Stalking Horse Protections, (IV) Setting the Dates for the Bid Deadline, Auction (If Needed) and Sale Approval Hearing, (V) Establishing Notice Procedures and Approving Forms of Notice, (VI) Approving Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases and (VII) Authorizing the Sellers to File the Confidential Schedules Under Seal; and (B) a Sale Order (I) Approving the Sale of the Sellers' Assets Outside the Ordinary Course of Business, (II) Authorizing the Sale Free and Clear of All Liens, Claims and Interests, (III) Approving the Stalking Horse Agreement; (IV) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 16].

78.    "**Sale Order**" means the *Findings of Fact and Conclusions of Law and Order Authorizing (A) Sale of Certain Assets to SpecialtyCare IOM Services, LLC Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code and (B) Assumption by the Debtors, and Assignment to SpecialtyCare IOM Services, LLC, or Certain Executory Contracts Pursuant to Section 365 of the Bankruptcy Code* [Docket No. 184] entered on April 10, 2015.

79.    "**SpecialtyCare**" means SpecialtyCare IOM Services, LLC.

80.    "**Sponsor**" means Waud Capital Partners and certain of its affiliates.

81.    "**Subordinated SpecialtyCare Deficiency Claim**" means any remaining Claim against the Debtors held by SpecialtyCare in connection with the Prepetition Credit Agreement, which Claim was not tendered by SpecialtyCare in connection with its credit bid approved by the Sale Order.

82.    "**Tax Attributes**" means the collective attributes of the taxpayer, including net operating losses, general business and minimum tax credit carry forwards, capital loss carry forwards, the basis of the taxpayer's assets and foreign tax credit carry forwards.

83.    "**Tax Code**" means the Internal Revenue Code of 1986, as amended.

84.    "**Transition Contracts**" means, collectively, (i) that certain 401k Plan EBP Audit Agreement dated December 31, 2013, by and between ProNerve, LLC and Anton Collins Mitchell LLP; (ii) that certain Office Lease, dated February 13, 2013, between Orchard & Greenwood LLC and ProNerve, LLC.; (iii) that certain Limited Letter of Agency dated March 13, 2013, by and between Qwest Communications Company, LLC d/b/a CenturyLink QCC and ProNerve; (iv) that certain Level (3) Communications Quote dated May 1, 2013, by and between Level (3) Communications, LLC and ProNerve; (v) that certain Application for Services dated December 13, 2012, by and between Ceridian Corporation and ProNerve LLC; (vi) that certain Application for Services dated December 13, 2012, by and between Ceridian Corporation and ProNerve LLC; (vii) that certain Master Services Agreement dated February 19, 2014, by and between Telesphere Networks Ltd. and ProNerve; (viii) that certain Amendment to Master Services Agreement dated February 19, 2014, by and between Telesphere Networks Ltd. and ProNerve; (ix) that certain Master Services Agreement Customer Responsibilities Guide dated February 19, 2014, by and between Telesphere Networks Ltd. and ProNerve; (x) that certain Certificate of Authorized Signers dated February 19, 2014, by and between Telesphere Networks

- 13 -

Ltd. and ProNerve; (xi) that certain Master Services Agreement Sales Order Form dated February 19, 2014, by and between Telesphere Networks Ltd. and ProNerve; (xii) that certain Master Services Agreement Toll Free Letter of Agency dated February 19, 2014, by and between Telesphere Networks Ltd. and ProNerve; (xiii) that certain Letter of Authorization to Port Number(s) dated January 29, 2013, by and between Cloudnet Group and ProNerve; (xiv) that certain Letter of Authorization to Port Number(s) dated January 29, 2013, by and between Cloudnet Group and ProNerve; (xv) that certain VoIP Services Quote and Order dated January 30, 2013, by and between Cloudnet Group and ProNerve, LLC; (xvi) that certain Ceridian Corporation General Terms and Conditions Agreement dated June 14, 2011; (xvii) that certain Billing Services Agreement dated as of September 1, 2011, by and between S&S Billing Services, Inc. and NeuroLive Group, LLC; (xviii) that certain Billing Services Agreement dated as of September 1, 2011, by and between S&S Billing Services, Inc. and PhysIOM Group, LLC; (xix) that certain Billing Services Agreement Assignment, Assumption and Amendment dated December 11, 2012, by and between S&S Billing Services, Inc. and ProNerve LLC; (xx) that certain Image Management Agreement dated April 4, 2013, by and between Wells Fargo Financial Leasing, Inc. and ProNerve, LLC; and (xxi) that certain Image Management Agreement dated October 16, 2013, by and between Wells Fargo Financial Leasing, Inc. and ProNerve, LLC.

85.    "**Transition Services Agreement**" means Schedule 10.1 of the Sale Agreement.

86.    "**Treasury Regulations**" means the regulations, including temporary regulations or any successor regulations promulgated under the United States Internal Revenue Code of 1986, as amended from time to time.

87.    "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

88.    "**Unclaimed Distribution Deadline**" means ninety (90) days after the date on which the Plan Administrator makes a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a Holder of an Allowed Claim.

89.    "**Unpaid Professional Claims**" means the portion of any unpaid Professional Claims, including any amounts Allowed in excess of the amounts set forth in the DIP Financing Budget.

90.    "**Unsecured Claims Distributions**" means Distributions on account of Allowed Unsecured Claims.

91.    "**Unsecured Claims Distribution Fund**" means the $250,000 in Cash to be paid by SpecialtyCare into a segregated Debtor account upon the filing of the Combined Plan and Disclosure Statement, in accordance with the Sale Order and the record of the Sale Hearing, and held in trust by the Debtors until transferred on the Effective Date to an account maintained by the Plan Administrator for Distribution in accordance with this Combined Plan and Disclosure Statement.

92.    "**UST**" means the Office of the United States Trustee for the District of Delaware.

93.    "**Voting Deadline**" means August 17, 2015 at 4:00 p.m. (ET).

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in the Combined Plan and Disclosure

- 15 -

Statement are to the respective section in, article of, schedule to, or exhibit to the Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in the Combined Plan and Disclosure Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement.

## III.

## BACKGROUND AND DISCLOSURES

On the Filing Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code initiating these Chapter 11 Cases. After the Filing Date, the Debtors have remained in possession of their assets and management of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**A.**     **Debtors' Organizational Structure.**

ProNerve is a Delaware limited liability company and a direct, wholly-owned subsidiary of Holdings. ProNerve has the following seven direct, wholly-owned subsidiaries: (i) Boulder Intraoperative Monitoring, LLC, a Colorado LLC, (ii) Eugene Intraoperative Monitoring, LLC, a Delaware LLC, (iii) Denver South Intraoperative Monitoring, LLC, a Delaware LLC, (iv) Colorado Intraoperative Monitoring, LLC, a Delaware LLC, (v) Riverside Intraoperative Monitoring, LLC, a Delaware LLC, and (vi) Topeka Intraoperative Monitoring, a Delaware LLC, and (vii) ProNerve Technologies, LLC.

- 16 -

**B.      Description of the Debtors' Business as of the Filing Date.**

Founded in 2008, ProNerve is headquartered in a suburb of Denver, Colorado.  ProNerve

and its Affiliated Practices provided IOM Services to health systems, acute care hospitals,

specialty hospitals, ambulatory surgical centers, surgeons, and physician groups in more than 25

states.

ProNerve and each of its Affiliated Practices is party to multiple management service

agreements, pursuant to which the Affiliated Practices make certain payments to ProNerve in

exchange for administrative, management, and back-office support services.  In addition to the

revenue collected by ProNerve under those agreements, ProNerve collected revenue from

healthcare providers and third party payors for the technical IOM Services provided by

ProNerve.  The Affiliated Practices are not debtors or debtors in possession in the Chapter 11

Cases.

ProNerve employed over 200 full-time and part-time employees, including approximately

4 part-time technologists, 131 full-time technologists, 4 regional managers, 14 readers, and 72

corporate staff.

The IOM Services offered by ProNerve and the Affiliated Practices were used for nearly

25,000 patient cases in 2014.  In 2014, ProNerve had net revenue of approximately $31 million

and a net loss of approximately $9 million.

In addition to its headquarters in Colorado, ProNerve also leased an office in Scottsdale,

Arizona, where two readers were employed and some of the Debtors' assets were located.

**C.      The Debtors' Pre-Petition Indebtedness.**

In December 2012, ProNerve, LLC entered into the Prepetition Credit Agreement,

pursuant to which the lenders thereto agreed to extend to ProNerve the Loan Commitments.  The

Loan Commitments are guaranteed by, and secured by substantially all of the assets of, the

- 17 -

Debtors and the Affiliated Practices pursuant to that certain Guaranty and Security Agreement, dated December 20, 2012, between ProNerve, certain other credit parties thereto, and GECC. As of the Filing Date, the aggregate principal amount outstanding under the Loan Commitments was $43,176,850.17.

**D.    Events Precipitating the Chapter 11 Filing.**

Beginning in 2012, in an effort to increase market share, ProNerve acquired the assets of several IOM Service providers, including (i) Northwest Neurodiagnostics, Inc. in February 2012, (ii) Intraoperative Monitoring Services, LLC in October 2012, (iii) PhysIOM Group, LLC and its affiliates in December 2012, and (iv) Broncor, Inc. in October 2013. Unfortunately, many of these strategic acquisitions resulted in significant accrued liabilities on account of earnout obligations, which affected ProNerve's balance sheet, including its ability to timely service the Loan Commitments.

Additionally, there was a high rate of turnover among ProNerve's senior management, which created operational difficulties. For example, from 2012 to 2015, ProNerve had four different CEOs and four different CFOs.

For calendar years 2012, 2013, and 2014, ProNerve's net revenue was approximately $14.2 million; $32 million; and $31 million, respectively, and its net loss was approximately $5.8 million; $3.7 million; and $9 million, respectively. The number of patient cases utilizing the IOM Services provided by ProNerve and its Affiliated Practices in 2012, 2013 and 2014 was approximately 11,000; 28,000; and 25,000, respectively.

Beginning in early 2014, ProNerve and its advisors, including ProNerve's Sponsor, began exploring multiple restructuring alternatives as a result of ProNerve's ongoing financial struggles. In November 2013, ProNerve retained A&M to assist with general revenue cycle and cash collection items. During this time, ProNerve failed to make scheduled principal payments

- 18 -

due under the Prepetition Credit Agreement on January 2, 2014. Shortly thereafter, on January 6, 2014, ProNerve expanded A&M's retention to include the appointment of a Chief Restructuring Officer.

In connection with negotiations between the parties to the Prepetition Credit Agreement, GECC and ProNerve, among others, executed that certain Short Term Forbearance Agreement, dated March 28, 2014, pursuant to which GECC agreed to forbear from exercising its default remedies under the Prepetition Credit Agreement through April 11, 2014. After further discussions, GECC and ProNerve, among others, executed that certain Forbearance Agreement, dated April 11, 2014, pursuant to which GECC agreed to forbear from exercising its default remedies under the Prepetition Credit Agreement through October 2, 2014. In connection therewith, the Sponsor agreed to provide a cash equity investment to ProNerve in an amount equal to at least $2.5 million. The Sponsor ultimately made a total cash equity infusion of $5 million—$2.5 million on April 17, 2014 and $2.5 million on May 1, 2014.

Despite the Sponsor's cash equity infusion, ProNerve's liquidity continued to dwindle during the forbearance period, and its financial health became more desperate. And despite expiration of the forbearance agreement in October 2014, ProNerve failed to make certain scheduled principal payments due under the Prepetition Credit Agreement on January 1, 2015.

Due to myriad regulatory and financial issues faced by ProNerve, none of the out-of-court restructuring alternatives pursued by ProNerve and its advisors proved viable. After consideration of all reasonably available alternatives, and in light of the Debtors' liquidity constraints and other related business challenges, the Debtors and their respective managers and officers determined, in an exercise of their business judgment, that it would be in the Debtors'

best interest to commence the Chapter 11 Cases and pursue a sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code section 363.

**E.      The Chapter 11 Cases.**

The following is a brief description of certain major events that occurred during these Chapter 11 Cases.

1.      First Day Motions and Orders.

On the Filing Date, in addition to the voluntary petitions for relief filed by the Debtors under Chapter 11 of the Bankruptcy Code, the Debtors also filed a number of motions and applications seeking certain "first day" relief, including the following:

a.      *Debtors' Motion for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases.* The Debtors sought entry of an Order directing the joint administration of the Chapter 11 Cases and the consolidation thereof for procedural purposes only.  On February 26, 2015, the Bankruptcy Court entered an Order granting the motion [Docket No. 30].

b.      *Debtors' Motion for Order (I) Authorizing the Debtors to Prepare a Consolidated List of the Debtors' Top Thirty Unsecured Creditors; and (II) Approving the Form and Manner of the Notice of Commencement.* The Debtors sought an Order (i) authorizing the Debtors to prepare a consolidated list of the Debtors' thirty largest unsecured creditors and (ii) approving the form and manner of notice of the commencement of these Chapter 11 Cases.  On February 26, 2015, the Bankruptcy Court entered an Order granting the motion [Docket No. 31].

c.      *Application for an Order Appointing The Garden City Group LLC as Claims and Noticing Agent for the Debtors Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) and Local Rule 2002-1(f), Nunc Pro Tunc to the Petition Date.* The Debtors sought to appoint The Garden City Group LLC as the claims and noticing agent in order to assume responsibility

- 20 -

for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' Chapter 11 Cases. On February 26, 2015, the Bankruptcy Court entered an Order granting the application [Docket No. 32].

      d.    *Debtors' Motion for an Order Authorizing the Debtors to Continue Using Debtors' Bank Accounts, Business Forms, and Cash Management System.* The Debtors requested the authority to, among other things, (i) continue to use their existing bank accounts with the same account numbers, styles, and business forms as the Debtors used prepetition and (ii) open new accounts whenever needed. On February 26, 2015, the Bankruptcy Court entered an Order granting the motion [Docket No. 33].

      e.    *Debtors' Motion for Authority to (I) Pay Prepetition Personnel Wages, Salaries and Other Compensation; (II) Reimburse Prepetition Personnel Business Expenses; (III) Make Payments for Which Prepetition Payroll Deductions were Made; (IV) Contribute to Prepetition Personnel Benefit Programs and Continue Such Programs in the Ordinary Course of Business; (V) Pay Workers' Compensation Obligations; and (VI) Pay all Costs and Expenses Incident to the Foregoing Payments and Contributions.* The Debtors sought entry of an Order authorizing, but not directing, the Debtors to pay: (i) all prepetition wages, salaries, and other accrued compensation to personnel; (ii) all reimbursable prepetition personnel business expenses; (iii) all payments for which prepetition payroll deductions, withholdings or matching employer contributions were made; (iv) all contributions to prepetition personnel benefit programs (and authorization to continue such programs in the ordinary course of business); (v) all vacation and other paid leave benefits in the ordinary course of business; (vi) all workers' compensation program obligations; and (vii) all processing costs and administrative expenses relating to the foregoing payments and contributions, including any payments to third-party

administrators or other administrative service providers. On February 26, 2015, the Bankruptcy Court entered an Order granting the motion [Docket No. 34].

      f.      *Debtors' Motion for an Order (I) Authorizing, but Not Directing, the Debtors to (A) Continue Insurance Coverage Entered into Prepetition, (B) Renew or Purchase New Insurance Policies in the Ordinary Course of Business, (C) Pay all Prepetition Obligations Relating Thereto, and (D) Maintain the Installment Payment Policies; and (II) Authorizing and Directing the Debtors' Banks and Other Financial Institutions to Process and Honor Checks and Transfers Related to Such Obligations.* The Debtors sought entry of an Order (i) authorizing, but not directing them to: (a) continue insurance coverage entered into prepetition, (b) renew or purchase new insurance policies, including tail coverage for directors & officers liability and other insurance, (c) pay all prepetition obligations relating thereto, in an aggregate amount not to exceed the Prepetition Cap, (d) pay all Deductible Amounts; and (e) maintain the Installment Payment Policies; and (ii) authorizing and directing the Debtors' banks and other financial institutions to process and honor checks and transfers related to such obligations. On February 26, 2015, the Bankruptcy Court entered an Order granting the motion [Docket No. 35].

      g.      *Debtors' Motion for Order Authorizing Payment of Prepetition Claims of Certain Critical Vendors.* The Debtors sought entry of an Order authorizing the Debtors to make payments toward the prepetition fixed, liquidated and undisputed claims of certain critical vendors, subject to the conditions described therein. On February 26, 2015, the Bankruptcy Court entered an Order granting the motion [Docket No. 36].

      h.      *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Use of Cash Collateral; (III) Granting Adequate Protection; and (IV) Scheduling a Final Hearing.* The Debtors sought an Order

(a) authorizing the Debtors to obtain postpetition financing on a senior secured, priming, superpriority basis; (b) authorizing the Debtors to use Cash Collateral; (c) granting adequate protection to SpecialtyCare IOM Services, LLC for the priming of the liens under the Prepetition Credit Agreement and the Debtors' use of the Cash Collateral; and (d) scheduling a Final Hearing on the DIP Motion.  On February 26, 2015, the Bankruptcy Court entered an Order granting the motion on an interim basis [Docket No. 37].  On March 16, 2015, the Committee filed its *Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to Debtors Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Use of Cash Collateral; (III) Granting Adequate Protection; and (IV) Scheduling a Final Hearing* [Docket No. 96].  The Debtors, the Committee and SpecialtyCare ultimately agreed to a resolution of the Committee's objection, and on March 20, 2015, the Bankruptcy Court entered an Order granting the motion on a final basis in accordance with the aforementioned resolution [Docket No. 115].

        i.     *Debtors' Motion for Order Expediting Consideration of, and Shortening the Notice Period Applicable to, the Bid Procedures and Bid Protections Component of Debtors' Sale Motion.*  The Debtors sought entry of an Order expediting consideration of, and shortening the notice period applicable to, the "bidding procedures" component of the Sale Motion.  On February 26, 2015, the Bankruptcy Court entered an Order granting the motion [Docket No. 38].

     2.     Employment and Compensation of Debtors' Professionals and Advisors.

On March 17, 2015, the Bankruptcy Court entered Orders authorizing the Debtors to retain McDermott Will & Emery LLP as general bankruptcy counsel [Docket No. 104] and Pepper Hamilton LLP as Delaware bankruptcy counsel [Docket No. 103].  On March 19, 2015,

the Bankruptcy Court entered an Order authorizing the Debtors to retain A&M to provide certain officers and additional personnel *nunc pro tunc* to the Filing Date [Docket No. 111].

      3.    <u>Appointment of Committee.</u>

On March 6, 2015, the UST appointed the Committee [Docket No. 68].  The original members of the Committee were Cardinal Peak LLC, Northwest Neurodiagnostics, Inc., and NeuroDiagnostic Solutions, Inc.

To assist the Committee in carrying out its duties, the Committee selected Blank Rome LLP as its counsel and Carl Marks Advisory Group LLC as its financial advisor.  On May 12, 2015, the Bankruptcy Court entered Orders authorizing the Committee to employ Blank Rome LLP as counsel to the Committee [Docket No. 234] and Carl Marks Advisory Group LLC as financial advisor to the Committee [Docket No. 235].

On May 12, 2015, Northwest Neurodiagnostics, Inc. resigned from the Committee.

      4.    <u>Claims Process and Bar Date</u>

          a.    <u>Section 341(a) Meeting of Creditors</u>

On March 31, 2015, the UST presided over the Section 341(a) meeting of creditors in the Chapter 11 Cases.

          b.    <u>Schedules and Statements</u>

The Debtors filed with the Bankruptcy Court their Schedules on March 25, 2015.  On June 2, 2015, the Debtors filed (i) certain amendments to the Schedules [Docket No. 254], and (ii) the *Debtors' Notice of Waived and Satisfied Claims* [Docket No. 253].

c.    Bar Date(s)

The Bankruptcy Court fixed May 29, 2015 at 4:00 p.m. Eastern Time as the date by

which Creditors had to file proofs of claim in these Chapter 11 Cases.  The deadline for filing a

proof of claim by a Governmental Unit is August 24, 2015 at 4:00 p.m. Eastern Time.

5.    The Sale of Substantially All of the Debtors' Assets

Prior to the Filing Date, SpecialtyCare acquired all of the rights under the Prepetition

Credit Agreement.  Contemporaneously therewith, the Debtors and SpecialtyCare executed the

Sale Agreement.  The Sale Agreement provided for a purchase price of $35 million in the form

of a credit bid, plus the assumption of certain liabilities, and thus the Debtors received no cash

proceeds from the Sale.

a.    Sale Motion and Bid Procedures

On February 24, 2015, the Debtors filed the Sale Motion.  As set forth in the Sale

Motion, the bid procedures proposed thereunder provided a process designed to ensure the

Debtors, their estates and creditors received the highest and best value possible for the Debtors'

assets, in the context of these Chapter 11 Cases.  The Debtors believed that, subject to the receipt

of higher and better proposals, the Sale Agreement represented the best alternative available to

the Debtors.

On March 10, 2015, the Committee filed an objection to the Sale Motion in which the

Committee argued, *inter alia*, that timeline for the Sale proposed by the Debtors should be

extended.  To resolve the objection, the Debtors and the Committee agreed, among other things,

to move the Sale Hearing from March 20, 2015 to April 10, 2015.  On March 11, 2015, the

Bankruptcy Court entered an Order granting the relief with respect to the bid procedures set forth

in the Sale Motion, as modified by the agreement between the Debtors and the Committee [Docket No. 81].

On April 8, 2015, the Committee filed its objection to the Sale Motion in which the Committee argued, *inter alia*, the Sale should not be approved by the Court [Docket No. 164]. To resolve the Committee's objection, SpecialtyCare agreed to contribute the Unsecured Claims Distribution Fund to satisfy Unsecured Claims. The Bankruptcy Court approved the Sale to SpecialtyCare by entry of the Sale Order. The Sale closed on April 14, 2015.

## F.   **Certain Federal Income Tax Consequences**

The following discussion is a summary of certain U.S. federal income tax consequences of the Combined Plan and Disclosure Statement to the Debtors and to Holders of Claims and Equity Interests. This discussion is based on the Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof.

Due to the complexity of certain aspects of the Combined Plan and Disclosure Statement, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims, and each Holder's status and method of accounting and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are uncertain. No legal opinions have been requested from counsel with respect to any of the tax aspects of the Combined Plan and Disclosure Statement and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. Further, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtors and the Holders of Claims and Equity Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or the Holders of Claims or Equity Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, insurance companies, financial institutions, real estate investment trusts, tax-exempt organizations, small business investment companies, regulated investment companies, foreign taxpayers, persons whose functional currency is not the U.S. dollar, persons subject to the alternative minimum tax, and persons holding Claims or Equity Interests as part of a "straddle," "hedge," "constructive sale" or "conversion transaction" with other investments).  This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue.  No aspect of foreign, state, local or estate and gift taxation is addressed.

EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

1.    Tax Consequences to the Debtors

Pursuant to the Tax Code and subject to certain exceptions, a taxpayer generally must recognize income from COD Income to the extent that such taxpayer's indebtedness is discharged for an amount less than the indebtedness' adjusted issue price determined in the manner described below.  Generally, the amount of COD Income, subject to certain statutory and judicial exceptions, is the excess of (i) the adjusted issue price of the discharged indebtedness

less (ii) the sum of the fair market value (determined at the date of the exchange) of the consideration, if any, given in exchange for such discharged indebtedness.

The recognition of COD Income may be treated differently in the context of a confirmed chapter 11 plan.  For example, under the Bankruptcy Exception, instead of recognizing COD Income, the taxpayer is required, pursuant to section 108(b) to reduce certain of that taxpayer's tax attributes to the extent of the amount of COD Income.  The Tax Attributes of the taxpayer generally are reduced in the following order:  net operating losses, general business and minimum tax credit carry forwards, capital loss carry forwards, the basis of the taxpayer's assets and, finally, foreign tax credit carry forwards.  If the amount of COD Income exceeds the amount of Tax Attributes available to be reduced, the excess still is excluded from income. Pursuant to section 108(b)(4)(A), the reduction of Tax Attributes does not occur until the end of the taxable year after such Tax Attributes have been applied to determine the tax in the year of discharge or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD Income is realized.  Section 108(e)(2) provides a further exception to the recognition of COD Income upon the discharge of debt, providing that a taxpayer will not recognize COD Income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for United States federal income tax purposes.

     2.    <u>Tax Consequences to Creditors</u>

     a.    <u>Holders of Claims</u>

Generally, a Holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of

- 28 -

reorganization in respect of a Holder's Claim. The tax basis of a Holder in a Claim will generally be equal to the Holder's cost. To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized generally will be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.

A Holder who received Cash (or potentially other consideration) in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Combined Plan and Disclosure Statement, will be treated as having received interest income to the extent that any consideration received is characterized for United States federal income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under the Combined Plan and Disclosure Statement on account of its Claim.

b.    Non-United States Persons

A Non-United States Person generally will not be subject to United States federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Combined Plan and Disclosure Statement.

3.    Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

**G.    Certain Risk Factors To Be Considered**

Prior to voting on the Combined Plan and Disclosure Statement, each Holder of a Claim entitled to vote should consider carefully the risk factors described below, as well as all of the information contained in this Combined Plan and Disclosure Statement, including the exhibits hereto. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Combined Plan and Disclosure Statement and its implementation.

1.    Risk of Non-Confirmation of Combined Plan and Disclosure Statement

Although the Debtors believe the Combined Plan and Disclosure Statement will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance

- 30 -

that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for confirmation or that such modifications would not necessitate a re-solicitation of votes.

       2.      <u>Delays of Confirmation and/or Effective Date</u>

Any delay in confirmation and effectiveness of the Combined Plan and Disclosure Statement could result in, among other things, increased Administrative Expense Claims. These or any other negative effects of delays in confirmation or effectiveness of the Combined Plan and Disclosure Statement could endanger the ultimate approval of the Combined Plan and Disclosure Statement by the Bankruptcy Court.

       3.      <u>Alternative Plan</u>

If the Combined Plan and Disclosure Statement is not confirmed, the Debtors, the Committee, or any other party in interest could attempt to formulate a different plan. However, the additional costs, all of which would constitute Administrative Expense Claims, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to Chapter 7. Accordingly, the Debtors believe that the Combined Plan and Disclosure Statement enables creditors to realize the best return under the circumstances.

**IV.**

**SUMMARY OF DEBTORS' ASSETS; SUMMARY
OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES**

**A.**    **<u>Summary of Remaining Assets.</u>**

The following chart provides a summary of the Remaining Assets, the estimated value of such assets, and the realized value of such assets that are available to Creditors of the Debtors' Estates:

| Asset | Estimated Value | Realized Value |
|---|---|---|
| Cash on Hand | $1,690,000 | $1,690,000 |
| Unsecured Claims Distribution Fund | $250,000 | $250,000 |
| Causes of Action | Unknown | Unknown |

The following chart provides a summary of treatment of each Class of Claims (other than Administrative Expense Claims, Priority Tax Claims and Intercompany Claims) and an estimate of the recoveries for each Class. The treatment provided in the chart below is for information purposes only and is qualified in its entirety by Article VII of the Combined Plan and Disclosure Statement.

| Class | Estimated Allowed Claims[3] | Treatment | Estimated Recovery to Holders of Allowed Claims[4] |
|---|---|---|---|
| Class 1 – Other Secured Claims | $10,000 | Paid in Full From Sale Proceeds | 100% |
| Class 2 – Other Priority Claims | $0 | Paid in Full | 100% |
| Class 3 – General Unsecured Claims | $2,620,030.94 | Pro Rata Share of Funds Available from Unsecured Claims Distribution | 5% |

[3] These amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by creditors in proofs of claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases, and objections to such Claims have not been fully litigated and may continue following the Effective Date and the Consummation Date. Moreover, as of the date hereof, the Bar Date applicable to Governmental Units has not passed and, as a result, additional Claims may be asserted against the Debtors. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[4] The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Cases. As set forth in footnote 2 above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

| | | Fund | |
|---|---|---|---|
| Class 4 – Subordinated SpecialtyCare Deficiency Claims | $8,983,754.28 | Subordinated to Class 3 | 0% |
| Class 5 – Equity Interests | n/a | No Distribution | 0% |

## V.

## CONFIRMATION AND VOTING PROCEDURES

### A.    Confirmation Procedure

1.    Confirmation Hearing

A hearing before the Bankruptcy Court has been scheduled for

[_____, 2015] at [__:__] a.m. (ET) at the United States Bankruptcy Court,

824 North Market Street, 5th Floor, Courtroom #5, Wilmington, DE 19801 to consider (i)

approval of the Combined Plan and Disclosure Statement as providing adequate information

pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Plan and

Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.  The Confirmation

Hearing may be adjourned from time to time by the Bankruptcy Court without further notice,

except for an announcement of the adjourned date made at the Confirmation Hearing.

2.    Procedure for Objections

Any objection to approval or confirmation of the Combined Plan and Disclosure

Statement must be made in writing and specify in detail the name and address of the objector, all

grounds for the objection and the amount of the Claim held by the objector.  Any such objection

must be filed with the Bankruptcy Court and served on the Debtors' counsel, Committee's

counsel, the UST, and all parties who have filed a notice of appearance by 4:00 p.m., prevailing

Eastern Time, on August 17, 2015.  Unless an objection is timely filed and served, it may not be

considered by the Bankruptcy Court.

3.    Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in these Chapter 11 Cases are that the Combined Plan and Disclosure Statement be: (i) accepted by all impaired classes of Claims and Equity Interests or, if rejected by an impaired class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against and is "fair and equitable" with respect to such class; and (ii) feasible. The Bankruptcy Court must also find that:

a.    The Combined Plan and Disclosure Statement has classified claims and interests in a permissible manner;

b.    The Combined Plan and Disclosure Statement complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

c.    The Combined Plan and Disclosure Statement has been proposed in good faith.

4.    Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a claim or equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with secured Claims, unsecured Claims and Equity Interests. The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Equity Interests in the same Class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

- 34 -

5.    Impaired Claims and Equity Interests

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes

"Impaired" by the Combined Plan and Disclosure Statement and may receive a payment or

Distribution under the Combined Plan and Disclosure Statement may vote on the Combined Plan

and Disclosure Statement.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims

may be "Impaired" if the Combined Plan and Disclosure Statement alters the legal, equitable or

contractual rights of the Holders of such Claims treated in such Class.  The Holders of Claims

not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the

Combined Plan and Disclosure Statement and do not have the right to vote on the Combined

Plan and Disclosure Statement.  The Holders of Claims in any Class that will not receive any

payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure

Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the

right to vote.

6.    Eligibility to Vote on the Combined Plan and Disclosure Statement

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed unsecured

Claims in Classes 3 and 4 may vote on the Combined Plan and Disclosure Statement.  In order to

vote on the Combined Plan and Disclosure Statement, you must hold a Claim in Class 3 or 4 and

have timely filed a proof of Claim or have a Claim that is identified on the Schedules that is not

listed as disputed, unliquidated or contingent, or be the holder of a Claim that has been

temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

7.    Solicitation Notice

All parties in interest have received a notice containing (a) notice of the Confirmation

Hearing; (b) the email address, aduncliffe@mwe.com, at which parties in interest may request

copies of the Combined Plan and Disclosure Statement, ballot, and related documents; and (c) a

telephone number, (212) 547-5317, through which parties in interest can request to obtain paper

copies of the Combined Plan and Disclosure Statement, ballot, and related documents. Holders

of Claims in Classes 3 and 4, which are the only Classes entitled to vote to accept or reject the

Combined Plan and Disclosure Statement, have been provided a notice and a ballot. Each

Holder of a Claim in Classes 3 or 4 should complete its respective ballot by (i) indicating such

Holder's decision to either accept or reject the Combined Plan and Disclosure Statement in the

boxes provided on the ballot, and (ii) signing and returning the ballot to the address set forth on

the ballot (please note that envelopes and prepaid postage have not been included with the

ballot).  BALLOTS SENT BY FACSIMILE TRANSMISSION ARE NOT ALLOWED AND

WILL NOT BE COUNTED.

    8.    Procedure/Voting Deadlines

    In order for your ballot to count, you must complete, date, sign and properly mail a paper

ballot (please note that envelopes are not included with the ballot) to the Claims and Balloting

Agent at the following address:

| If by First-Class Mail: | If by Hand Delivery or Overnight Mail: |
|---|---|
| PNR Case Administration<br>c/o GCG<br>PO Box 10157<br>Dublin, OH 43017-3157 | PNR Case Administration<br>c/o GCG<br>5151 Blazer Parkway, Suite A<br>Dublin, Ohio 43017 |

    The Claims and Balloting Agent must RECEIVE original ballots by mail or overnight

delivery, on or before **August 17, 2015 at 4:00 p.m. (ET)** (the "**Voting Deadline**").  (Except as

otherwise ordered by the Bankruptcy Court, you may not change your vote after the Claims and

Balloting Agent receives your original paper ballot.)

Any ballot that is timely received and contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Combined Plan and Disclosure Statement will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Combined Plan and Disclosure Statement.

The following ballots will not be counted or considered for any purpose in determining whether the Combined Plan and Disclosure Statement has been accepted or rejected:

1.    any ballot received after the Voting Deadline, unless the Court grants an extension of the Voting Deadline with respect to such ballot;

2.    any ballot that is illegible or contains insufficient information to permit the identification of the claimant;

3.    any ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Combined Plan and Disclosure Statement;

4.    any ballot cast for a Claim designated as unliquidated, contingent or disputed or as zero or unknown in amount and for which no Rule 3018(a) motion has been filed by the Rule 3018(a) motion deadline;

5.    any ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of the Combined Plan and Disclosure Statement;

6.    any unsigned ballot; or

7.    any ballot that is submitted by fax or email.

9.      Acceptance of the Combined Plan and Disclosure Statement.

As a Creditor, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  At least one impaired Class of creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement.  The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

**VI.**

**TREATMENT OF UNCLASSIFIED CLAIMS**

**A.      Administrative Expense Bar Date.**

Requests for payment of Administrative Expense Claims must be filed no later than the applicable Administrative Expense Bar Date.  Holders of Administrative Expense Claims that do not file requests for the allowance and payment thereof on or before the applicable Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtors or their Estates.

**B.      Administrative Expense Claims.**

Except to the extent that any Person entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense

Claim on the date that is the later of seven (7) Business Days after the occurrence of the Effective Date and seven (7) Business Days after such Administrative Expense Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable.

### C.    **Professional Claims**

Professional Claims will be paid in accordance with Section VI(B) up to the amounts set forth in the DIP Financing Budget for each Professional, after which the balance of any Remaining Assets, including proceeds from Causes of Action, will be paid to Holders of Allowed Administrative Expense Claims, including Allowed Professional Claims, in accordance with any agreement by and between the Professionals in writing prior to the date of such payment.

The deadline for submission by Professionals for Bankruptcy Court approval of accrued compensation and reimbursement of expenses shall be thirty (30) days after the Effective Date.

### D.    **Priority Tax Claims.**

Each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the date that is the later of seven (7) Business Days after the occurrence of the Effective Date and seven (7) Business Days after such Allowed Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable; or (b) Cash in an amount agreed to by the Plan Administrator and such Holder; provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to this Combined Plan and Disclosure Statement and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Plan Administrator, the Debtors, or the Debtors' Estates.

E.    **Intercompany Claims.**

All Intercompany Claims shall be disallowed pursuant to this Combined Plan and Disclosure Statement as of the Effective Date.

F.    **Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, to the extent unpaid through the Effective Date, shall be paid by the Plan Administrator from Cash on Hand and, as appropriate, SpecialtyCare pursuant to the Transition Services Agreement.  After the Effective Date and through the closing of the Chapter 11 Cases, all fees payable pursuant to section 1930 of title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, shall be paid by the Plan Administrator, which shall be reimbursed by SpecialtyCare pursuant to the Transition Services Agreement.

## VII.

## CLASSIFICATION OF CLAIMS AND
## EQUITY INTERESTS; ESTIMATED RECOVERIES

Claims, other than Administrative Expense Claims, Priority Tax Claims and Intercompany Claims are classified for all purposes, including voting, confirmation and Distribution pursuant to the Combined Plan and Disclosure Statement, as follows:

| Class | Status |
|---|---|
| Class 1 – Other Secured Claims | Unimpaired |
| Class 2 – Other Priority Claims | Unimpaired |
| Class 3 – General Unsecured Claims | Impaired |
| Class 4 – SpecialtyCare Deficiency Claims | Impaired |
| Class 5 – Equity Interests | Impaired |

A.     **TREATMENT OF CLAIMS AND EQUITY INTERESTS.**

1.     CLASS 1 – OTHER SECURED CLAIMS

a.     Classification.  Class 1 consists of all Other Secured Claims against the Debtors.

b.     Impairment and Voting.  Class 1 is unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 1 Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.     Treatment.  Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Debtors, Holders of Allowed Class 1 Claims, if any, shall receive in full satisfaction of such Allowed Class 1 Claim on the date that is the later of seven (7) Business Days after the occurrence of the Effective Date and seven (7) Business Days after such Allowed Class 1 Claim becomes an Allowed Claim, the collateral securing their Claims, or Cash equal to one hundred percent (100%) of the proceeds received by the Debtors from the collateral securing their Allowed Claims.

2.     CLASS 2 – OTHER PRIORITY CLAIMS

a.     Classification.  Class 2 consists of Other Priority Claims against the Debtors.

b.     Impairment and Voting.  Class 2 is unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 2 Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.     Treatment.  Unless otherwise agreed to by Holders of Allowed Class 2 Claims and the Debtors, Holders of Allowed Class 2 Claims, if any, shall be paid on the date that

is the later of seven (7) Business Days after the occurrence of the Effective Date and seven (7) Business Days after such Allowed Class 2 Claim becomes an Allowed Claim, in full and final satisfaction of their Class 2 Claims, Cash equal to one hundred percent (100%) of their Allowed Claims.

       3.     CLASS 3 – GENERAL UNSECURED CLAIMS

           a.     Classification.  Class 3 consists of General Unsecured Claims against the Debtors.

           b.     Impairment and Voting.  Class 3 is impaired by the Combined Plan and Disclosure Statement.  Holders of Class 3 Claims are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

           c.     Treatment.  Holders of Allowed Class 3 Claims shall be paid, in full and final satisfaction of their Class 3 Claims, Cash equal to their Pro Rata share of the Unsecured Claims Distribution Fund on the later of (i) seven (7) Business Days after such General Unsecured Claim becomes an Allowed Claim and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, or as soon thereafter as is practicable.

       4.     CLASS 4 – SUBORDINATED SPECIALTYCARE DEFICIENCY CLAIMS

           a.     Classification.  Class 4 consists of all Subordinated SpecialtyCare Deficiency Claims.

b.    Impairment and Voting.  Class 4 is impaired by the Combined Plan and Disclosure Statement.  The Holders of Class 4 Claims are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.    Treatment.  Holders of Allowed Class 4 Claims shall be paid, in full and final satisfaction of their Class 4 Claims, Cash equal to the amount of Cash remaining in the Estates after Allowed Class 3 Claims have been paid one hundred percent (100%) of their Allowed Claim amount or as soon thereafter as is reasonably practicable, provided, however, that Holders of Allowed Class 4 Claims shall not receive any funds from the Unsecured Claims Distribution Fund.

5.    CLASS 5 – EQUITY INTERESTS

a.    Classification.  Class 5 consists of the Equity Interests in the Debtors.

b.    Impairment and Voting.  Class 5 is impaired under the Combined Plan and Disclosure Statement.  The Holders of the Class 5 Equity Interests are deemed to have rejected the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.    Treatment.  The Holders of the Class 5 Equity Interests will receive no Distribution.  On the Effective Date, all outstanding Equity Interests will be cancelled.  Upon cancellation, no property will be distributed to, or retained by, Holders of such Equity Interests.

**B.    Modification of Treatment of Claims and Equity Interests.**

The Plan Administrator reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Claim at any time after the Effective Date upon the consent of the Holder of the Claim whose Allowed Claim is being adversely affected.

## VIII.

## PROVISIONS REGARDING THE PLAN ADMINISTRATOR AND OVERSIGHT COMMITTEE

**A.    Distributions**.

All Distributions under the Combined Plan and Disclosure Statement shall be made by the Plan Administrator.

**B.    Corporate Action**.

1.    Transfer of Assets and Assumption of Liabilities.  On the Effective Date, (i) the Debtors shall, in accordance with the Combined Plan and Disclosure Statement, cause the Remaining Assets to be transferred to the Plan Administrator free and clear of liens, claims, and interests, but subject to the Combined Plan and Disclosure Statement.  Under this Combined Plan and Disclosure Statement, the Remaining Debtors (under the authority of the Plan Administrator) shall retain any remaining obligations of the Debtors' Estates, including without limitation the payment of any Allowed Administrative Expense Claim.

2.    Liquidation and Dissolution of Debtors.  On the Effective Date, without the necessity for any other or further action to be taken by or on behalf of the Debtors (except the Remaining Debtors), and upon the transfer of the Remaining Assets to the Plan Administrator in accordance with Section VIII(B) of the Combined Plan and Disclosure Statement, the members of the board of directors or managers, as the case may be, and the respective officers, of each of the Debtors (except the Remaining Debtors) shall be deemed to have been removed, and each such Debtor (except the Remaining Debtors) shall be deemed dissolved for all purposes.  On the Effective Date, the members of the board of directors or managers, as the case may be, and the respective officers, of the Remaining Debtors shall be deemed to have been removed, and at such time as determined by the Plan Administrator to be appropriate, the Plan Administrator may

- 44 -

cause the existence of the Remaining Debtors to be terminated by dissolution or as otherwise

permitted by applicable law, all on such terms as the Plan Administrator determines to be

necessary or appropriate to implement the Combined Plan and Disclosure Statement and all

without further order of the Bankruptcy Court. The Plan Administrator may effectuate such

terminations in accordance with applicable law, without further order of the Bankruptcy Court

and cause the Remaining Debtors to adopt any plan and execute, deliver and file any agreement

or document the Plan Administrator determines to be necessary and appropriate.

**C.**     **Plan Administrator.**

1.     Appointment of the Plan Administrator. A Plan Administrator shall be selected

by the Committee, no later than five (5) business days prior to the Voting Deadline, and upon the

Effective Date shall serve in accordance with this Combined Plan and Disclosure Statement.

The Plan Administrator shall not be required to give any bond or surety or other security for the

performance of its duties unless otherwise ordered by the Bankruptcy Court.

2.     Establishment of the Plan Administrator.

On the Effective Date the Plan Administrator shall be established. On the Effective Date,

the Plan Administrator shall receive the Remaining Assets (free and clear of all claims, liens, and

interests, but subject to the Combined Plan and Disclosure Statement) for Distributions on

account of Allowed Claims in accordance with this Combined Plan and Disclosure Statement.

3.     Duties of the Plan Administrator. The Plan Administrator shall (i) be a

representative of the Estates pursuant to section 1123 of the Bankruptcy Code, (ii) have the rights

and powers set forth in this Combined Plan and Disclosure Statement, and (iii) be governed in all

things by the terms hereof. The Plan Administrator shall have reasonable access to the Debtors'

books and records on reasonable prior notice to SpecialtyCare or its designee. Subject to the

terms of this Combined Plan and Disclosure Statement, and the limitations and/or obligations set

- 45 -

forth in this Section VIII.C and Section VIII.D, the Plan Administrator shall be authorized, empowered, and directed to take all actions necessary to comply with the Combined Plan and Disclosure Statement and exercise and fulfill the duties and obligations arising hereunder, including, without limitation, to (i) act as a trustee for and administer the Remaining Assets, (ii) take any action necessary to the transfer of the Remaining Assets to the Plan Administrator and dissolution of the Debtors in accordance with the Combined Plan and Disclosure Statement and applicable law, (iii) retain attorneys, advisors, and other Professionals as may be necessary and appropriate to perform the duties required of, and the obligations assumed by, the Plan Administrator under the Combined Plan and Disclosure Statement, without the need for prior court approval, (iv) execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Plan Administrator, (v) open, maintain, and administer bank accounts as necessary to discharge the duties of the Plan Administrator under the Combined Plan and Disclosure Statement, (vi) administer, sell, liquidate, or otherwise dispose of the Remaining Assets in accordance with the Combined Plan and Disclosure Statement, (vii) investigate, commence, and prosecute all Causes of Action transferred to the Plan Administrator under the Combined Plan and Disclosure Statement to judgment or settlement, and take all other necessary and appropriate steps to collect, recover, liquidate, or otherwise reduce such Causes of Action to Cash, (viii) make, on behalf of the Debtors and the Estates, all transfers and Distributions on account of Allowed Unsecured Claims required to be made pursuant to the Combined Plan and Disclosure Statement on and after the Effective Date, including, without limitation, Distributions from the proceeds of the Unsecured Claims Distribution Fund, (ix) file and prosecute objections to, and negotiate, settle, or otherwise resolve, any and all Disputed Claims, (x) represent the Debtors' Estates before the Bankruptcy

- 46 -

Court and other courts of competent jurisdiction with respect to matters concerning the Plan Administrator, (xi) prepare and file quarterly financial reports after the Consummation Date pursuant to Section VIII(C) of this Combined Plan and Disclosure Statement, and (xii) comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein, and all applicable laws and regulations concerning the matters set forth herein.

4.    Accounting and Reporting.  The Plan Administrator shall maintain an accounting of receipts and disbursements with respect to the Plan Administrator, which shall be open to inspection and review by the Bankruptcy Court and any Holder of an Allowed Claim or its respective Professionals, upon reasonable notice to the Plan Administrator.  After the Effective Date, the Plan Administrator shall serve the United States Trustee with, and shall file with the Bankruptcy Court, a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Cases remain open, as well as a final financial report after the Bankruptcy Court enters a final decree closing each of the Chapter 11 Cases.

5.    Plan Administrator Expenses.  The Plan Administrator may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid reasonable and documented expenses of the Plan Administrator from the Unsecured Claims Distribution Fund.

6.    Retention of Professionals.  The past or current retention of any Professional by a creditor or the Committee in the Chapter 11 Cases shall not be asserted by any party in interest as a basis to disqualify such Professional from being retained by the Plan Administrator.  Attorneys, advisors and any other Professional retained by the Plan Administrator shall submit to the Plan Administrator periodic statements for all reasonable compensation for services rendered, and

- 47 -

reimbursement for actual and necessary expenses incurred, by such Professionals. The Plan Administrator shall have twenty (20) days to object to any such statement. In the event that an objection is received by a Professional and cannot be promptly resolved by such professional and the Plan Administrator, the dispute shall be submitted by the Plan Administrator to the Bankruptcy Court for adjudication. The Bankruptcy Court shall retain jurisdiction to adjudicate any such objection. In the event that no objection is raised to a statement within the twenty (20) day period, such statement shall be promptly paid by the Plan Administrator.

7.      Termination of the Plan Administrator. The Plan Administrator shall be terminated upon the earlier of (i) the three (3) year anniversary of the Effective Date or (ii) the entry by the Bankruptcy Court of a final decree closing each of the Chapter 11 Cases and submission by the Plan Administrator of the final financial report to the Bankruptcy Court. On or prior to the date of termination of the Plan Administrator, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Plan Administrator for cause shown. Upon termination of the Plan Administrator or as soon as practicable thereafter, the balance of any Cash and other property of the Plan Administrator shall be given to Charity.

8.      Limitation on Liability. No recourse shall ever be had, directly or indirectly, against the Plan Administrator or its officers, directors, agents, employees, attorneys, advisors or other professionals by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, or upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Administrator under the Combined Plan and Disclosure Statement or by reason of the creation of any indebtedness by the Plan Administrator under the Combined Plan and Disclosure Statement for any purpose authorized by the Combined Plan and Disclosure Statement. All such liabilities,

- 48 -

covenants, and agreements of the Plan Administrator, its respective officers, directors, agents, employees, attorneys, advisors, or other Professionals, whether in writing or otherwise, under the Combined Plan and Disclosure Statement shall be enforceable, if at all, only against, and shall be satisfied only out of, the Remaining Assets. Every undertaking, contract, covenant or agreement entered into in writing by the Plan Administrator shall provide expressly against the personal liability of the Plan Administrator. The Plan Administrator and its officers, directors, agents, employees, attorneys, advisors and other Professionals shall not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their respective best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as counsel for the Plan Administrator shall be conclusive evidence of such good faith and best judgment; provided, however, that this Section VIII(C) shall not apply to any bad faith, fraud, gross negligence or willful misconduct by the Plan Administrator or its officers, directors, agents, employees, attorneys, advisors or other professionals.

9.     Reliance on Documents.  The Plan Administrator may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper entity.

10.     Requirement of Undertaking.  The Plan Administrator may request any court of competent jurisdiction to require, and any such court may in its discretion require, in any suit for the enforcement of any right or remedy under the Combined Plan and Disclosure Statement, or in any suit against the Plan Administrator for any act taken or omitted by the Plan Administrator that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any

party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

**D.    Oversight Committee**

1.    Appointment.  The Oversight Committee's initial membership shall consist of one or more Persons appointed by the Committee as of the Effective Date.

2.    Termination.  The Oversight Committee shall continue in existence until such time as the Remaining Debtors are terminated or its member(s) unanimously elect to cause such Committee's dissolution.

3.    Oversight Committee Duties and Powers.  The Oversight Committee shall represent the interests of Holders of Allowed General Unsecured Claims during the existence of the Remaining Debtors and shall have the obligation to undertake in good faith each of the acts and the responsibilities set forth for the Oversight Committee in this Combined Plan and Disclosure Statement to:

(a)    Terminate by unanimous vote the Plan Administrator for cause and upon such causal termination or upon resignation, death, incapacity or removal of the Plan Administrator, to appoint a successor Plan Administrator; provided, that the Oversight Committee shall file with the Bankruptcy Court a notice of the appointment of such successor;

(b)    Approve the sale of any Remaining Assets;

(c)    Receive and review any report detailing the means by which the Plan Administrator invests and/or insures the Remaining Assets pending final Distribution;

(d)    Cause the Plan Administrator to abandon pursuit of any and all Causes of Action if the Oversight Committee determines that such pursuit is not in the best interest

- 50 -

of the Estates, including interests of Holders of Allowed General Unsecured Claims; and

(e)    Approve any and all actions of the Plan Administrator by a majority vote that would have an extraordinary impact upon Distributions.

4.    <u>Voting Rights</u>. The Oversight Committee shall create such by-laws (if any) as it deems necessary or convenient.

5.    <u>Reporting Rights</u>. The Plan Administrator shall report to the Oversight Committee at such period as agreed to by the Oversight Committee and the Plan Administrator, as to the status of all Distributions, material litigation, investment/insurance of Remaining Assets, Claims objections, and all other material matters affecting the Allowed General Unsecured Claims.

**E.    Causes of Action.**

1.    <u>Preservation of Causes of Action</u>. In accordance with section 1123(b) of the Bankruptcy Code or any corresponding provision of federal or state laws, and except as otherwise provided in the Combined Plan and Disclosure Statement or the Confirmation Order, on and after the Effective Date, all such Remaining Assets shall be retained by the Plan Administrator, and the Plan Administrator may, in accordance with this Combined Plan and Disclosure Statement, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of such Remaining Assets.

2.    <u>No Waiver</u>. Except as otherwise explicitly provided in this Combined Plan and Disclosure Statement, nothing in the Combined Plan and Disclosure Statement shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Estates may have or choose to assert on behalf of the Debtors or their respective Estates under any provision of the Bankruptcy Code or

any applicable nonbankruptcy law. No entity may rely on the absence of a specific reference in the Combined Plan and Disclosure Statement to any Cause of Action or account receivable against it as an indication that the Plan Administrator will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action or accounts receivable upon or after the confirmation or consummation of the Plan.

3.    Authority to Act. Prior to, on, or after the Effective Date, as applicable, all matters expressly provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable laws, without any requirement of further vote, consent, approval, authorization or other action by such stockholders, equity security holders, officers, directors, partners, managers, members or other owners of such entities or notice to, order of or hearing before the Bankruptcy Court.

**F.    Rights and Powers of the Plan Administrator.**

Except as other set forth in this Combined Plan and Disclosure Statement, the Plan Administrator shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Combined Plan and Disclosure Statement, (ii) establish, as necessary, disbursement accounts for the deposit and Distribution of all amounts distributed under the Combined Plan and Disclosure Statement; (iii)

- 52 -

make Distributions in accordance with the Combined Plan and Disclosure Statement, (iv) object to Claims, as appropriate; (v) employ and compensate professionals to represent it with respect to its responsibilities, (vi) assert any of the Debtors' claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and (vii) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Combined Plan and Disclosure Statement, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.  Except as otherwise set forth in this Combined Plan and Disclosure Statement, the Plan Administrator may take any and all actions which it deems reasonably necessary or appropriate to defend against any Claim, including, without limitation, the right to:  (a) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim, including, without limitation, the retention of professionals, experts and consultants; and (b) enter into a settlement agreement or agreements, provided that such settlement is entered into by the Plan Administrator in good faith.

**G.      Post Confirmation Date Expenses of the Plan Administrator.**

The Plan Administrator shall receive reasonable compensation for services rendered pursuant to the Combined Plan and Disclosure Statement without further Court Order.  In addition, except as otherwise ordered by the Bankruptcy Court, the amount of reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date (including, without limitation, reasonable attorney and professional fees and expenses) shall be paid without further Court Order.

IX.

## PROVISIONS GOVERNING DISTRIBUTIONS UNDER
## THE COMBINED PLAN AND DISCLOSURE STATEMENT

**A.    Method of Payment.**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank or an electronic wire.

**B.    Objections to and Resolution of Claims.**

The Plan Administrator shall have the right to file objections to Claims after the Effective Date.  All objections shall be litigated to entry of a Final Order; provided, however, that only the Plan Administrator shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court.

**C.    Claims Objection Deadline.**

The Plan Administrator, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims no later than the Claims Objection Deadline; *provided*, *however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Plan Administrator for cause.

**D.    No Distribution Pending Allowance.**

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Combined Plan and Disclosure Statement.

E.    **Escrow of Cash Distributions.**

On any date that Distributions are to be made under the terms of the Combined Plan and Disclosure Statement, the Plan Administrator shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Plan Administrator shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

F.    **Distribution After Allowance.**

Except as otherwise provided herein, within the later of (i) seven (7) Business Days after a Claim becomes an Allowed Claim and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, the Plan Administrator shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

G.    **Investment of Segregated Cash and Property.**

To the extent practicable, the Plan Administrator may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; provided, however, that the Plan Administrator shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

H.    **Delivery of Distributions.**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Plan Administrator has not received a written notice of a change of address.

1.    Undeliverable Distributions. If the Distribution to the Holder of any Claim is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such holder unless and until the Plan Administrator is notified in writing of such Holder's then current address. Undeliverable Distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution.

2.    Until such time as an undeliverable Distribution becomes an Unclaimed Distribution, within 30 days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, the Plan Administrator shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

3.    The Plan Administrator shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, provided, however, nothing contained

in the Combined Plan and Disclosure Statement shall require the Plan Administrator to locate any Holder or an Allowed Claim.

**I.      Unclaimed Distributions.**

Any Cash or other property to be distributed under the Combined Plan and Disclosure Statement shall revert to the Plan Administrator if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline.  If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, the Distribution made to such Entity shall be deemed to be reduced to zero.  Any Unclaimed Distributions to Holders of General Unsecured Claims shall be donated to Charity if the amount of the Unclaimed Distribution exceeds the cost of effectuating another Distribution.

**J.      Set-Off.**

The Debtors and/or Plan Administrator, as applicable, retains the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.

**X.**

**IMPLEMENTATION AND EFFECT OF CONFIRMATION
OF COMBINED PLAN AND DISCLOSURE STATEMENT**

**A.      Means for Implementation of the Combined Plan and Disclosure Statement**.

In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute the means for implementation of the Combined Plan and Disclosure Statement:

1.      Limited Substantive Consolidation.  This Combined Plan and Disclosure Statement provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of this Combined Plan and Disclosure Statement, including voting on this Combined Plan and Disclosure Statement by the Holders of Claims and making any

Distributions to Holders of Claims. The Debtors propose limited substantive consolidation to avoid the inefficiency of proposing and voting in respect of entity-specific Claims for which there would be no impact on distributions. On the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates  hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under this Combined Plan and Disclosure Statement shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Plan and Disclosure Statement) affect the legal and corporate structures of the Debtors.

      2.      <u>Funding of Liabilities and Distributions</u>.  On the date that is the later of seven (7) Business Days after the Effective Date and the date that such Claims become Allowed Claims, the Plan Administrator shall pay using Cash on Hand (i) Allowed Professional Claims up to the amounts set forth in the DIP Financing Budget and (ii) Allowed Administrative Expense Claims; *provided, however,* that, pursuant to the Transition Services Agreement, SpecialtyCare shall reimburse the Debtors for Allowed Administrative Expense Claims arising (i) after May 22,

2015 in connection with the Debtors' obligations under the Transition Services Agreement, and (ii) prior to the Closing Date pursuant to the Sale Order. On and after the Effective Date, the Plan Administrator shall pay, to the extent possible, the Unpaid Professional Claims from the Remaining Assets other than the Unsecured Claims Distribution Fund. On and after the Effective Date, the Plan Administrator shall use the Remaining Assets to satisfy the wind-down costs of the Estates consistent with the DIP Financing Order. The Unsecured Claims Distribution Fund shall be used to make Distributions (i) first, to Holders of Allowed Priority Tax Claims and Other Priority Claims, until paid in full (ii) second, to Holders of Allowed General Unsecured Claims in Class 3, until paid in full, and (iii) third, to Holders of Allowed Subordinated SpecialtyCare Deficiency Claims.

Pursuant to the Sale Order, SpecialtyCare shall promptly reimburse the Debtors for all expenses incurred by the Debtors to vendors and employees in the ordinary course of business and in connection with the Debtors' operations prior to the Closing Date, upon providing SpecialtyCare with a copy of the invoice representing such expenses and, to the extent that such incurred expenses have not yet been paid by the Debtors prior to the Closing Date, and subject to a cap of $1.37 million.

3.      Corporate Action; Effectuating Documents; Further Transactions. On the Effective Date, all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the member or managers of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the members and managers of the Debtors.

## XI.

## INJUNCTION, EXCULPATION AND RELEASES

A.    **Injunction.**

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  EXCEPT AS OTHERWISE PROVIDED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT OR TO THE EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE CONFIRMATION ORDER OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS SHALL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, THEIR ESTATES, ANY OF THEIR PROPERTY, OR THE EXCULPATED PARTIES ON ACCOUNT OF ANY SUCH CLAIMS OR EQUITY INTERESTS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT, OR SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTORS, EXCEPT AS PART OF THE PROCESS SET FORTH IN ARTICLE VIII.F OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE

PROVISIONS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; PROVIDED,

HOWEVER, THAT SUCH ENTITIES SHALL NOT BE PRECLUDED FROM EXERCISING

THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE

COMBINED PLAN AND DISCLOSURE STATEMENT OR THE CONFIRMATION ORDER;

PROVIDED, FURTHER, THAT THE FOREGOING PROVISIONS OF THIS ARTICLE XI.A

SHALL NOT APPLY TO ANY ACTS, OMISSIONS, CLAIMS, CAUSES OF ACTION OR

OTHER OBLIGATIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THIS

COMBINED PLAN AND DISCLOSURE STATEMENT OR ANY DEFENSES THERETO.

**B.    Exculpation.**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE COMBINED PLAN

AND DISCLOSURE STATEMENT, THE DEBTORS AND ANY OF THEIR RESPECTIVE

MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, ATTORNEYS,

REPRESENTATIVES, FINANCIAL ADVISORS, INVESTMENT BANKERS, AGENTS OR

OTHER PROFESSIONALS, AND THE EXCULPATED PARTIES AND ANY OF SUCH

PARTIES' SUCCESSORS AND ASSIGNS, SOLELY IN THEIR CAPACITIES AS SUCH,

SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY CLAIM, ACTION,

PROCEEDING, CAUSE OF ACTION, AVOIDANCE ACTION, SUIT, ACCOUNT,

CONTROVERSY, AGREEMENT, PROMISE, RIGHT TO LEGAL REMEDIES, RIGHT TO

EQUITABLE REMEDIES, RIGHT TO PAYMENT, OR CLAIM (AS DEFINED IN

BANKRUPTCY CODE SECTION 101(5)), WHETHER KNOWN, UNKNOWN, REDUCED

TO JUDGMENT, NOT REDUCED TO JUDGMENT, LIQUIDATED, UNLIQUIDATED,

FIXED, CONTINGENT, MATURED, UNMATURED, DISPUTED, UNDISPUTED,

SECURED, OR UNSECURED AND WHETHER ASSERTED OR ASSERTABLE DIRECTLY

OR DERIVATIVELY, IN LAW, EQUITY, OR OTHERWISE TO ONE ANOTHER OR TO

ANY CLAIMHOLDER OR EQUITY INTEREST HOLDER, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, ADVISORS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION ORIGINATING OR OCCURRING ON OR AFTER THE FILING DATE THROUGH AND INCLUDING THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE DEBTORS, THE CHAPTER 11 CASES, THE NEGOTIATION AND FILING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DISCLOSURE STATEMENT, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE CONSUMMATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE ADMINISTRATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, OR THE PROPERTY TO BE LIQUIDATED AND/OR DISTRIBUTED UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT, EXCEPT FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION, AND IN ALL RESPECTS SHALL BE ENTITLED TO RELY REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE FOREGOING PARAGRAPH SHALL APPLY TO ATTORNEYS ONLY TO THE EXTENT PERMISSIBLE UNDER APPLICABLE BAR RULES AND APPLICABLE CASE LAW.

## XII.

## EXECUTORY CONTRACTS

A.    **Rejection of Executory Contracts.**

On the Effective Date, all Executory Contracts not assumed before the Confirmation Date will be deemed rejected; *provided, however*, that (i) the Transition Contracts shall be deemed rejected as of the Consummation Date, and (ii) that certain General Services Agreement, dated June 24, 2013, by and between C T Corporation System and ProNerve, shall be deemed rejected as of June 24, 2016.  The Confirmation Order shall constitute an Order approving such rejections in this Section XII.A.

B.    **Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Combined Plan and Disclosure Statement.**

If the rejection by the Debtors, pursuant to the Combined Plan and Disclosure Statement or otherwise, of an Executory Contract gives rise to a Claim, a Proof of Claim must be filed with the Claims Agent at (i) (if by first class mail), PNR Case Administration c/o GCG, PO Box 10157, Dublin, OH 43017-3157 or (ii) (if by hand delivery or overnight mail) PNR Case Administration c/o GCG, 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017, by no later than twenty-four (24) days after the later of (i) notice of entry of the Confirmation Order, and (ii) other notice that the Executory Contract has been rejected.  Any Proofs of Claim not filed and served within such time periods will be forever barred from assertion against the Debtors and their Estates.

## XIII.

## CONDITIONS TO THE EFFECTIVE DATE

**A.    Conditions Precedent to the Effective Date.**

The Combined Plan and Disclosure Statement shall not become effective unless and until the following conditions shall have been satisfied or waived:

1.    The Confirmation Order shall have become a Final Order.

2.    The Plan Administrator shall be duly appointed, qualified and acting in that capacity.

**B.    Effect of Failure of Conditions.**

If each condition to the Effective Date has not been satisfied or duly waived within forty-five (45) days after the Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Debtors before the any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this Section, the Combined Plan and Disclosure Statement shall be deemed null and void in all respects and nothing contained herein shall (A) constitute a waiver or release of any Claims by or against the Debtors, or (B) prejudice in any manner the rights of the Debtors.

**C.    Waiver of Conditions to Confirmation and Effective Date.**

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Debtors, without notice or an Order of the Bankruptcy Court, provided, however, the Debtors shall provide written notice to the Committee of any such waiver and an opportunity to consent,

which consent shall not be unreasonably withheld. The failure to satisfy or to waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to failure of such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

## XIV.

## **RETENTION OF JURISDICTION**

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Combined Plan and Disclosure Statement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1.    To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

2.    To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

3.    To issue such Orders in aid of execution and consummation of the Combined Plan and Disclosure Statement, to the extent authorized by section 1142 of the Bankruptcy Code;

4.    To consider any amendments to or modifications of the Combined Plan and Disclosure Statement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

5.    To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

- 65 -

6.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement;

7.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Sale Order;

8.      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

9.      To hear any other matter not inconsistent with the Bankruptcy Code;

10.     To enter a final decree closing the Chapter 11 Cases;

11.     To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement;

12.     To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

13.     To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, except as otherwise provided herein;

14.     To determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement or the Disclosure Statement;

15.    To determine any other matters that may arise in connection with or related to the Sale Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Sale Order;

16.    To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

17.    To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

18.    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Date, the hearing on the confirmation of the Combined Plan and Disclosure Statement for the purpose of determining whether a Claim, or Equity Interest is discharged hereunder or for any other purpose.

## XV.

## MISCELLANEOUS PROVISIONS

### A.    Amendment or Modification of the Combined Plan and Disclosure Statement.

Alterations, amendments or modifications of the Combined Plan and Disclosure Statement may be proposed in writing by the Debtors, at any time before the Confirmation Date, provided that the Combined Plan and Disclosure Statement, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.

### B.    Severability.

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such

- 67 -

Claims or Equity Interest as to which the provision is determined to be invalid, void or

unenforceable.  The invalidity, voidability or unenforceability of any such provision shall in no

way limit or affect the enforceability and operative effect of any other provision of the Combined

Plan and Disclosure Statement.

**C.**      **Revocation or Withdrawal of the Combined Plan and Disclosure Statement.**

      The Debtors reserve the right to revoke or withdraw the Combined Plan and Disclosure

Statement before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Plan

and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure

Statement shall be deemed null and void.  In such event, nothing contained herein shall

constitute or be deemed a waiver or release of any Claims by or against the Debtors or to

prejudice in any manner the rights of either of the Debtors in any further proceedings involving

the Debtors.

**D.**      **Binding Effect.**

      The Combined Plan and Disclosure Statement shall be binding upon and inure to the

benefit of the Debtors, the Holders of Claims, and the Holders of Equity Interests, and their

respective successors and assigns.

**E.**      **Notices.**

      All notices, requests and demands to or upon the Plan Administrator to be effective shall

be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly

given or made when actually delivered or, in the case of notice by facsimile transmission, when

received and telephonically confirmed, addressed as shall be set forth in the Confirmation Order.

**F.**      **Governing Law.**

      Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is

applicable, or to the extent an exhibit to the Combined Plan and Disclosure Statement provides

otherwise, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**G.     Withholding and Reporting Requirements.**

In connection with the consummation of the Combined Plan and Disclosure Statement, the Debtors and Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**H.     Allocation of Distributions between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**I.     Headings.**

Headings are used in the Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of the Combined Plan and Disclosure Statement for any other purpose.

**J.     Exhibits/Schedules.**

All exhibits and schedules to the Combined Plan and Disclosure Statement are incorporated into and are a part of the Combined Plan and Disclosure Statement as if set forth in full herein.

K.    **Filing of Additional Documents.**

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Plan Administrator shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

L.    **No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed as an admission by any Entity with respect to any matter set forth herein.

M.    **Successors and Assigns.**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

N.    **Reservation of Rights.**

Except as expressly set forth herein, the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, Holders of Claims or Equity Interest before the Effective Date.

O.    **Implementation.**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Plan and Disclosure Statement.

P.      **Inconsistency.**

In the event of any inconsistency among the Combined Plan and Disclosure Statement or

any other instrument or document created or executed pursuant to the Combined Plan and

Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall

govern.

Q.      **Closing of Chapter 11 Cases.**

Upon substantial consummation, the Plan Administrator may move for a final decree to

close the Chapter 11 Cases and to request such other Order as may be just.

R.      **Dissolution of the Committee.**

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically,

whereupon its members, Professionals and agents shall be released from any duties and

responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to

(i) obligations arising under confidentiality agreements, which shall remain in full force and

effect, (ii) applications for payment of fees and reimbursement of expenses of Professionals, and

(iii) any pending motions or motions for other actions seeking enforcement of implementation of

the provisions of the Combined Plan and Disclosure Statement).

S.      **Compromise of Controversies.**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution

and other benefits provided under the Combined Plan and Disclosure Statement, the provisions

of this Combined Plan and Disclosure Statement shall constitute a good faith compromise and

settlement of all Claims or controversies resolved pursuant to the Combined Plan and Disclosure

Statement and in these Chapter 11 Cases.  The entry of the Confirmation Order shall constitute

the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all

other compromises and settlements provided for in the Combined Plan and Disclosure Statement

- 71 -

and the Chapter 11 Cases, and the Bankruptcy Court's findings shall constitute its determination

that such compromises and settlements are in the best interests of the Debtors, the Estate and all

Holders of Claims and Equity Interests against the Debtors.

Dated:  June 24, 2015

<div style="margin-left: 40%;">

PRONERVE HOLDINGS, LLC

By:

<div style="font-size: small;">
George D. Pillari<br>
cn=George D. Pillari, o, ou=A&M<br>
Healthcare,<br>
email=gpillari@alvarezandmarsa<br>
l.com, c=US<br>
2015.06.24 12:43:04 -07'00'
</div>

Name:  George D. Pillari<br>
Title:   Chief Executive Officer

</div>